676 So.2d 827 (1996)
STAR ENTERPRISE
v.
STATE of Louisiana Through the DEPARTMENT OF REVENUE AND TAXATION and Ralph Slaughter, In His Official Capacity as Secretary of the Louisiana Department of Revenue and Taxation.
CITGO PETROLEUM CORPORATION
v.
STATE of Louisiana Through the DEPARTMENT OF REVENUE AND TAXATION and Ralph Slaughter, In His Capacity as Secretary of the Department of Revenue and Taxation.
ATLAS PROCESSING COMPANY
v.
STATE of Louisiana Through the DEPARTMENT OF REVENUE AND TAXATION and Ralph Slaughter, In His Capacity as Secretary of the Department of Revenue and Taxation.
Nos. 95 CA 1980 to 95 CA 1982.
Court of Appeal of Louisiana, First Circuit.
June 28, 1996.
*828 Leo C. Hamilton, Baton Rouge, for Appellee Plaintiff Star Enterprise.
Frank P. Simoneaux, Baton Rouge, for Appellee Plaintiff Atlas Processing Co. and Citgo Petroleum Corp.
Michael X. St. Martin, Houma, for Appellant Defendant State of Louisiana through Department of Revenue and Taxation, et al.
Geneva Landrum, Baton Rouge, and Philip F. Cossich, Jr., Belle Chasse, for Department Revenue and Taxation.
Before WATKINS and FOIL, JJ., and TANNER,[*] J. Pro Tem.
*829 FOIL, Judge.
This appeal challenges the action of the trial court in issuing a preliminary injunction enjoining the Louisiana Department of Revenue and Taxation from adopting a new formula for computing the taxable value of two by-products of the oil refining process without complying with the Louisiana Administrative Procedure Act's mandatory rule-making requirements. After a thorough review of the record, we affirm.

FACTS AND PROCEDURAL BACKGROUND
The facts pertinent to this appeal were stipulated by the parties, and thus are not in dispute. Three oil refineries, Star Enterprise, Citgo Petroleum Corporation and Atlas Processing Company, filed this petition seeking injunctive relief and a declaratory judgment in the Nineteenth Judicial District Court. They sought to enjoin the Department of Revenue and Taxation (Department) from enforcing the provisions of a document dated April 18, 1995, in which the Department substantially changed the method of valuation for the purpose of computing the use tax owed by the companies on the use of refinery gas, as well as the tax owed by Star and Citgo on the use of coke-on-catalyst.
Under Louisiana tax law, the use tax is levied on the "cost price" of each item of property used. La.R.S. 47:301(3)(a) defines "cost price" as the "actual cost of the articles of tangible personal property ... or the reasonable market value of the tangible personal property at the time it becomes susceptible to the use tax, whichever is less." The tax law also contains a provision dealing directly with the taxable value of refinery gas, found in La.R.S. 47:305D(1)(h). Prior to its amendment in 1990, La.R.S. 47:305D(1)(h) provided, in pertinent part, as follows:
D.(1) The ... use ... of the following tangible personal property is hereby specifically exempted from the tax imposed by this chapter:
(h) All energy sources when used for boiler fuel except refinery gas. Refinery gas used for any taxable purpose shall be subject to the tax imposed by this Chapter, and similar local taxes, provided that [after 1985] ... the value of refinery gas shall be the product of fifty-two cents multiplied by a fraction the numerator of which shall be the posted price for a barrel of West Texas Intermediate Crude Oil on December first of the preceding calendar year, and the denominator of which shall be twenty-nine dollars.[1]
Some time around 1987, the Department adopted LAC 61:I.4401(C)(2), which set forth the formula to be used to compute the taxable value of refinery gas for use tax purposes. This provision sets forth the same computation for valuing refinery gas found in La.R.S. 47:305D(1)(h). LAC 61:I.4401(C)(2) was adopted by the Department in accordance with the requirements of the Louisiana Administrative Procedure Act (LAPA).
Prior to September 6, 1994, the Department did not tax refinery use of coke-on-catalyst. In that month, the Louisiana Supreme Court ruled in BP Oil Company v. Plaquemines Parish Government, 93-1109 (La. 9/6/94); 651 So.2d 1322, that coke-on-catalyst, except when used as a boiler fuel, was subject to a local government's use tax.
In response to the BP Oil decision, pursuant to "Interpretative Policy and Procedure Memorandum 70.17," the Department notified all Louisiana oil refineries that as of September 6, 1994, it would begin to tax the use of coke-on-catalyst. In Memorandum 70.17, the Department informed the refineries that its existing regulation for computing the taxable value of refinery gas would be used to compute the taxable value of coke-on-catalyst, with the value of coke-on-catalyst being set at one-fourth of the value of refinery gas.
On December 28, 1994, the Department filed suit against all oil refineries operating in the State of Louisiana seeking to collect taxes it alleged were owed by the refineries on the use of refinery gas and coke-on-catalyst. *830 The Department also sought to collect penalties and interest on the unpaid amounts.
On January 20, 1995, the Department published a Notice of Intent in the Louisiana State Register, along with a proposed rule to provide a method of computing the taxable value of coke-on catalyst, and a fiscal and economic impact statement relative to the proposed rule. The proposed rule set forth the same computation for valuing coke-on-catalyst as was set forth by the Department in Memorandum 70.17.
On April 18, 1995, while its collection suits were pending, the Department sent a letter to Star, Citgo and Atlas concerning the method of valuation of refinery gas and coke-on-catalyst. The April 18 letter instructed the companies to "disregard any and all previous regulations, correspondence or other communications from the Department of Revenue and Taxation with respect to the taxation of refinery gas and coke-on-catalyst." The letter informed the companies that based on the advice of outside counsel, the Department intended to collect all taxes owed for the use of refinery gas and coke-on-catalyst in accordance with a formula which adopted an energy equivalent basis for determining the taxable value of refinery gas and coke-on-catalyst. This formula is different from the method of computing the taxable value of refinery gas and coke-on-catalyst found in La.R.S. 47:305D(1)(h), LAC 61:I.4401(C)(2), Memorandum 70.17 and the Notice of Intent published in the State Register on January 20, 1995.
The record reflects that the Department did not issue a Notice of Intent to rescind, revoke or amend the Notice of Intent it promulgated on January 20, 1995, with respect to the taxable value of coke-on-catalyst. Furthermore, the Department did not undertake any efforts to repeal, suspend, revoke or amend LAC 61:I.4401(C)(2) relative to the taxable value of refinery gas. The Department admits that in adopting the method of valuation employed in the April 18, 1995, letter, it did not follow the rule-making procedures of the LAPA, insisting that the letter did not constitute a "rule" falling under the purview of the LAPA.
In late April and May of 1995, during the pendency of the Department's collection suits in the oil companies' respective parishes of domicile, Star, Atlas and Citgo individually filed lawsuits in the Nineteenth Judicial District Court seeking injunctive and declaratory relief against enforcement of the formula adopted by the Department in the April 18, 1995, letter. The companies sought a declaratory judgment finding the April 18 letter invalid and unenforceable, demanded preliminary and permanent injunctions prohibiting the Department from enforcing the terms of the letter, and requested a writ of mandamus ordering the Department to comply with the provisions of the LAPA.
Specifically, the oil companies urged that the April 18, 1995, adoption of a new formula for determining the taxable value of refinery gas and coke-on-catalyst constituted a "rule" falling under the mandatory rule-making procedural requirements of the LAPA. They averred that the Department's method of valuation contained in the April 18 rule is invalid and unenforceable because it was adopted by the Department without substantial compliance with the notification and promulgation requirements of the LAPA. The companies also argued that the April 18, 1995, letter constituted an impermissible ex post facto law because it substantially increased the amount of taxes they must remit to the Department and subjects them to penalties and interest on amounts already remitted by the company in accordance with the Department's validly promulgated rules. Finally, the petitioners urged that their equal protection and due process rights were violated by the issuance of the April 18, 1995 letter.
In the injunction suit, the parties stipulated that since January of 1995, Star, Citgo and Atlas have paid taxes on their use of refinery gas in accordance with the formula set forth in La.R.S. 47:305D(1)(h) and LAC 61:I.4401(C)(2). Additionally, Star and Citgo have paid taxes on their use of coke-on-catalyst in accordance with the formula set forth in Memorandum 70.17 and the proposed rule of January 20, 1995.
The individual suits were consolidated for a hearing. On the same day the Department *831 filed the stipulations into the record, it filed exceptions raising, among other things, the objection of lis pendens based on the ongoing collection suits in the trial courts of the plaintiffs' respective domiciles. All objections filed by the Department were denied by the trial court, which cited the fact that the objections were filed by an attorney who was not the attorney of record for the Department, and thus lacked authority to represent the Department.[2]
After consideration of the stipulations, Judge Frank Saia granted the plaintiffs' request for a preliminary injunction, enjoining the Department from enforcing or attempting to enforce any of the provisions of the April 18, 1995, letter pertaining to the taxation of the use of refinery gas and the use of coke-on-catalyst.
This appeal, taken by the Department, followed. The Department alleges that the trial court erred in finding that the letter of April 18, 1995 constituted a "rule" that had to be issued in accordance with the provisions of the LAPA. The Department argues that if the letter is a "rule" subject to the requirements of the LAPA, the trial court lacked jurisdiction to enjoin enforcement of the rule under the terms of the LAPA. Additionally, the Department posits that the trial court was constitutionally and statutorily prohibited from issuing an injunction to prevent the Department from, in effect, collecting taxes from plaintiffs on the basis of its taxable value methodology. Finally, the Department contends that plaintiffs were not legally entitled to invoke the injunctive process because they had other remedies available to contest the validity of the April 18, 1995, action, and because they failed to show that the challenged action caused them irreparable harm. These arguments will be addressed in turn.

THE LOUISIANA ADMINISTRATIVE PROCEDURE ACT
We must first determine whether the April 18, 1995, letter constitutes a "rule" falling under the mandatory rule-making requirements of the LAPA. The LAPA contains elaborate procedural requirements which must be followed by administrative agencies engaged in rule-making. These provisions, by virtue of La.R.S. 49:967, are specifically applicable to the Department.
La.R.S. 49:953, which sets forth the procedure for the adoption of rules, requires an agency to publish notice of its intent to adopt, amend, or repeal any rule in the Louisiana Register. La.R.S. 49:953(A)(1)(b)(i). The agency must provide interested persons with copies of the intended rule, and it must offer them a reasonable opportunity to respond. La.R.S. 49:953(A)(2)(a) & (b)(i). La. R.S. 49:968, also specifically applicable to the Department, provides for procedures for legislative review of the exercise of the agency's rule-making authority, requiring the agency to submit a report relative to a proposed rule prior to the adoption, amendment or repeal of any rule.
La.R.S. 49:954 states that no rule shall be effective, nor may it be enforced, unless it was adopted in substantial compliance with the provisions of the LAPA. It further provides that no rule shall be effective or enforced unless (a) it was properly filed with the State Register; (b) a report on the rule was submitted to the legislature in accordance with La.R.S. 49:968, and (c) the approved economic and fiscal impact statements were filed with the Department of the State Register and published in the Louisiana Register. An administrative rule adopted in accordance with the requirements of the LAPA becomes effective upon its publication in the Louisiana Register. La.R.S. 49:954.
It is not disputed in this case that the Department did not satisfy any of the rule-making requirements of the LAPA in taking its action on April 18, 1995. The Department submits that none of these procedures were required because the April 18, 1995, letter did not constitute a "rule" and therefore, it did not fall under the LAPA's rule-making requirements.
As noted earlier, the Department is a rule-making agency subject to the rule-making procedures of the LAPA. The LAPA defines the term "rule" in La.R.S. 49:951(6) to mean:

*832 [E]ach agency statement, guide, or requirement for conduct or action, exclusive of those regulating only the internal management of the agency, which has general applicability and the effect of implementing or interpreting substantive law or policy, or which prescribes the procedure or practice requirements of the agency. `Rule' includes, but is not limited to, any provision for fees, fines, prices or penalties, the attainment or loss of preferential status, and the criteria or qualifications for licensure or certification by an agency. A rule may be of general applicability even though it may not apply to the entire state, provided its form is general and it is capable of being applied to every member of an identifiable class. The term includes the amendment or repeal of an existing rule but does not include declaratory rulings or orders.
La.R.S. 49:951(7) defines the term "rule-making" as follows:
`Rule-making' means the process employed by an agency for the formulation of a rule. The fact that a statement of policy or an interpretation of a statute is made in the decision of a case or in an agency decision upon or disposition of a particular matter as applied to a specific set of facts involved does not render the same a rule within this definition or constitute specific adoption thereof by the agency so as to be required to be issued and filed as provided in this Subsection.[3]
The Department contends that the letter dated April 18, 1995, does not constitute a "rule" because it was a mere correspondence to the oil companies in response to their complaints that the Department's petition in the collection suits against them was "vague." According to the Department, the letter only clarified the Department's position in the pending collection suits as to the proper method of determining the "cost price" of refinery gas and coke-on-catalyst, and should not be treated as a "rule" subject to the rule-making procedural requirements of the LAPA.
We disagree. The action taken by the Department on April 18, 1995, falls squarely under the LAPA's definition of a "rule." It contains a directive to the affected taxpayers to disregard the Department's previous rules, regulations and correspondence governing the valuation of refinery gas and coke-on-catalyst. It is of general applicability to all manufacturers of refinery gas and coke-on-catalyst. Furthermore, it contains the Department's interpretation of a substantive law, namely, the application of the term "cost-price" to the taxable transactions at issue therein, and also has the effect of implementing the substantive use tax law.
Particularly with respect to refinery gas, the April 18, 1995 action constitutes the repeal of the Department's rule governing the method to be employed in valuing refinery gas for use tax purposes. The Department did not rescind LAC 61:I.4401(C)(2), which set forth the method of computing the taxable value of refinery gas.
Because the April 18, 1995, letter adopted an entirely new method of computing the taxes at issue, it can hardly be said to constitute a mere clarification of the Department's position regarding the proper method of valuing the by-products. Rather, the directive to oil refineries to employ a new method of valuation of refinery gas and coke-on-catalyst constitutes a "rule" falling under the clear language of La.R.S. 49:951(6) subjecting it to the LAPA's rule-making procedural requirements.
It is undeniable that the Department's April 18, 1995, rule, establishing a new formula for computing use taxes owed by the taxpayers, was adopted by the Department without complying with the requirements of the LAPA. As such, the rule was unlawfully adopted and is therefore invalid and unenforceable. We must determine whether the taxpayers were entitled to an injunction to prohibit the enforcement of the illegally promulgated rule.

*833 SUBJECT MATTER JURISDICTION
We now consider the Department's argument that the trial court lacked subject matter jurisdiction to review the rule and to enjoin its enforcement. First, the Department contends that the trial court was statutorily precluded from determining the validity of the rule under the terms of the LAPA itself. La.R.S. 49:963 provides for judicial review of a rule in an action for a declaratory judgment in the district court in which the agency is located. La.R.S. 49:967 states that the provisions of the LAPA shall not apply to the Department of Revenue and Taxation, except for certain enumerated sections of the LAPA. The listing of those provisions of the LAPA that are applicable to the Department does not include the judicial review section of agency rules found in La.R.S. 49:963.
Because of this omission, the Department argues that the legislature intended to shield the Department from the type of suit brought by the taxpayers. It urges that the LAPA has the effect of depriving trial courts of subject matter jurisdiction to review the validity of the Department's rules and regulations, and immunizes the Department from suits challenging the validity of its rules.
Jurisdiction is the legal power or authority of the court to adjudicate the dispute. On the other hand, venue signifies the place where the action or proceeding is to be brought and tried. La.C.C.P. arts. 1, 41. La.R.S. 49:963 is a jurisdictional venue provision, vesting exclusive venue in the parish in which the agency is located to determine the validity of an agency's rules in a declaratory proceeding.
We need not determine the legislature's purpose in failing to make the judicial review provision applicable to the Department, for that omission simply cannot have the effect suggested by the Department. Subject matter jurisdiction is conferred by the Louisiana Constitution and not by statute. Robertson v. Northshore Regional Medical Center, 93-1375 (La.App. 1 Cir. 10/7/94); 645 So.2d 727, 729. La. Const. art. 5, § 16 vests Louisiana district courts with original jurisdiction over all civil matters, expect as otherwise authorized by the Constitution.
In Moore v. Roemer, 567 So.2d 75, 79 (La.1990), the Louisiana Supreme Court stated that the language of La. Const. art. 5, § 16 makes it clear that a district court is vested with at least concurrent original jurisdiction to adjudicate all civil matters except for those matters in which original jurisdiction over a civil matter was otherwise authorized by the Constitution itself in other courts or in other adjudicative tribunals.
A challenge to the validity of an administrative rule is a "civil matter" falling under the original jurisdiction of the district courts. See Moore v. Roemer, 567 So.2d at 79-80. The Constitution also vests district courts with the power to issue all orders and process in the aid of the jurisdiction of their courts. La. Const. art. 5, § 2. The power of the trial court to issue an injunction preventing enforcement of an illegally adopted administrative rule is also of constitutional origin.
Even if we were convinced that by enacting La.R.S. 49:963 and La.R.S. 49:967, the legislature did intend to immunize the Department from challenges to its rules based on violations of the LAPA, we would be compelled to find that attempt without effect. The legislature could not, by statute, divest the trial court of its constitutional subject matter jurisdiction to determine the legality of an administrative rule, and to issue an injunction preventing its enforcement if it were found to be illegally promulgated.
Accordingly, we reject the Department's argument that La.R.S. 49:963 divests the trial court of subject matter jurisdiction over this proceeding. We must now address the Department's argument that the Constitution itself precludes the trial court from granting the injunctive relief sought by plaintiffs.
La. Const. art. 7, § 3 requires the legislature to prohibit the issuance of process to restrain the collection of any tax. The legislature enacted La.R.S. 47:1575 to prohibit the issuance of process to restrain the collection of any tax. The Department argues that plaintiffs are in effect attempting to enjoin the Department from collecting taxes *834 owed by the plaintiffs, and therefore, the Constitution and La.R.S. 47:1575 forbids the trial court from issuing an injunction.
However, we agree with plaintiffs' position that the object of the instant suit is not to prevent the Department from collecting taxes; rather, these suits were brought to enjoin the Department from enforcing a rule it adopted without complying with the requirements of the LAPA. Although the trial court issued an injunction, the Department may continue to collect taxes from the refineries' use of refinery gas and coke-on-catalyst. The injunction only prohibits the Department from enforcing an entirely new method of valuation against the taxpayers under a rule that was illegally adopted. As such, La. Const. art. 7, § 3 and La.R.S. 47:1575 do not bar the trial court from issuing an injunction to prohibit the Department from enforcing the rule until the LAPA's requirements are satisfied.

INJUNCTIVE RELIEF
Finally, the Department contends that plaintiffs were not entitled to a preliminary injunction because they failed to show that they suffered irreparable injury or that they had no other adequate remedy at law. La.Code Civ.P. art. 3601 provides that "[a]n injunction shall issue in cases where irreparable injury, loss or damage may otherwise result to the applicant, or in other cases specifically provided by law."
Generally, irreparable injury means a loss that cannot be adequately compensated in money damages or measured by a pecuniary standard. Ouachita Parish Police Jury v. American Waste and Pollution Control Company, 606 So.2d 1341, 1350 (La.App. 2d Cir.), writ denied, 609 So.2d 234 (La. 1992), cert. denied, 508 U.S. 909, 113 S.Ct. 2339, 124 L.Ed.2d 249 (1993). The Department argues that plaintiff demonstrated only a monetary loss, and thus have not satisfied the "irreparable injury" requirement of La. Code Civ.P. art. 3601.
Irreparable injury is a prerequisite to obtaining injunctive relief only when the conduct sought to be enjoined is lawful. Where the conduct is illegal, a showing of irreparable injury is not required. Ouachita Parish Police Jury v. American Waste and Pollution Control Company, 606 So.2d at 1350. Since plaintiffs have demonstrated that the challenged rule was illegally adopted by the Department, they need not demonstrate irreparable injury to obtain injunctive relief against its enforcement.
Next, the Department contends that the plaintiffs are not entitled to injunctive relief because they had two other legal remedies by which they could have contested the validity of the rule. First, the Department cites La.R.S. 47:1576, which authorizes a taxpayer to remit taxes under protest and institute suit to recover the taxes paid under protest. Secondly, the Department urges that the plaintiffs could have asserted the invalidity of the rule in the collection suits filed against them by the Department.
In Ouachita Parish Police Jury v. American Waste and Pollution Control Company, 606 So.2d at 1351-1352, the court noted the confusion in the jurisprudence as to whether a plaintiff is required to demonstrate a lack of an adequate remedy at law in addition to satisfying the irreparable injury requirement. The court held that even if it were a separate requirement, the illegal action exception relieving a plaintiff from proving irreparable injury applied equally to the lack of an adequate remedy at law requirement. The court reasoned that since there is always the prospect of legal redress against defendants who violate the law, if such redress were considered an "adequate remedy at law," no injunction petition urging violation of the law would ever be successful.
We agree with the above cited case, and we find that because plaintiffs showed that the Department violated Louisiana law by issuing an illegally adopted rule, they need not show the lack of an adequate remedy to obtain injunctive relief against the enforcement of that rule.
The final prerequisite for obtaining injunctive relief, namely, that plaintiffs have made a prima facie showing that they will prevail on the merits, is easily satisfied under the facts of this case. Accordingly, we find that the trial court acted within its sound discretion *835 in granting the preliminary injunction in this case. See SREF Bon Marche Company v. D.H. Holmes Company, Limited, 572 So.2d 284, 288 (La.App. 1st Cir.1990), writ denied, 576 So.2d 45 (La.1991).

CONCLUSION
Based on the foregoing, we find that the trial court properly issued a preliminary injunction enjoining the Department from enforcing the provisions of the April 18, 1995, rule without complying with the notification and promulgation requirements of the LAPA. The State of Louisiana, Department of Taxation and Revenue, is cast with costs of this appeal in the amount of $1,079.95. This matter is remanded to the trial court for proceedings not inconsistent with this opinion.
AFFIRMED AND REMANDED.
NOTES
[*] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[1] The 1990 amendment to La.R.S. 47:305D(1)(h) did not change the valuation set forth in the earlier version of that provision.
[2] This appeal does not challenge the trial court's action in overruling the objection of lis pendens.
[3] In 1995, by La.Acts No. 1057, the legislature amended these definitions. The amendment had an effective date of June 29, 1995.