696 So.2d 1021 (1997)
LIBERTY MUTUAL INSURANCE COMPANY, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, and LM Insurance Corporation
v.
LOUISIANA INSURANCE RATING COMMISSION, Honorable James H. "Jim" Brown, Chairman; Carl J. Barbier; Byron Briggs; Michael Franks; Thomas Besselman; Charles Kirsch, Jr.; and Doug Foreman.
No. 96 CA 0793.
Court of Appeal of Louisiana, First Circuit.
February 14, 1997.
Opinion Denying Rehearing July 2, 1997.
*1022 Robert L. Rieger, Jr., Baton Rouge, for Plaintiffs/Appellees Liberty Mutual Insurance Company, et al.
C. Noel Wertz, Baton Rouge, Richard D. Chappuis, Robert N. Kallam, Lafayette, for Defendants/Appellants Louisiana Insurance Rating Commission, et al.
Frank P. Simoneaux, Baton Rouge, for Intervenor/Appellee Citgo Petroleum Corporation.
Before WATKINS, GONZALES and KUHN, JJ.
GONZALES, Judge.
This is an appeal by the Louisiana Insurance Rating Commission (LIRC), James H. Brown, Commissioner of Insurance, and the commissioners of LIRC (defendants), from a trial court judgment (1) preliminarily enjoining the defendants from regulating the issuance of an insurance policy by Liberty Mutual Insurance Company (LMIC) and/or its affiliates to Citgo Petroleum Corporation (Citgo), (2) preliminarily enjoining the defendants from conducting future inquiries into LMIC's or its affiliate's use of "wrap-up" insurance policies in Louisiana, and (3) declaring that a bulletin issued by LIRC was of no effect due to LIRC's failure to follow the rule-making requirements of the Louisiana *1023 Administrative Procedure Act (LAPA) prior to issuing the bulletin.[1]

FACTS AND PROCEDURAL HISTORY
This case involves the issuance of a "wrapup" insurance policy by LMIC to Citgo for a construction project at a Citgo plant in Calcasieu Parish. Wrap-up insurance programs, also referred to as consolidated insurance programs, or owner-controlled insurance programs, are used primarily for large construction projects in industry; they generally involve the issuance of workers' compensation and liability insurance to the principal of the project which provides coverage for all contractors, subcontractors, and their employees working on the construction project.[2] In this case, in connection with its construction project, Citgo contracted with LMIC for a wrap-up insurance program to cover its general contractor, Fluor Daniel, Inc., and all of its sub-contractors.
In February of 1995, prior to LMIC's issuance of the wrap-up insurance policy to Citgo, Dennis Alves, LMIC's director of workers' compensation and its intercompany and government relations department, contacted Chris Faber, Deputy Commissioner of LIRC, regarding the permissibility of wrap-up insurance programs in Louisiana. According to Alves, Faber informed him that such programs were permissible. Following LMIC's issuance of a wrap-up policy to Citgo, Alves again spoke to Faber, who then indicated that this type of policy was not permissible in Louisiana. In a letter dated May 19, 1995, Barita Morgan of the Louisiana Department of Insurance informed Alves that LIRC was studying wrap-up insurance programs and that the results of the study were expected to be presented at LIRC's June 21, 1995 meeting. Alves denies receiving this letter from Morgan. In a letter dated May 26, 1995, Alves requested that Faber provide further clarification of LIRC's position as to the permissibility of wrap-up insurance programs in Louisiana. He received no response.
On June 21, 1995, LIRC issued Bulletin LIRC 95-03 to all property and casualty insurance companies and rating organizations making rates and rule filings in Louisiana. The bulletin provided a general definition of wrap-up insurance and required, among other things, that all insurers file wrap-up insurance rates and rules with LIRC for approval before being used in Louisiana.
On June 26, 1995, LIRC issued an "Order to Show Cause" to LMIC ordering it to show cause at a hearing on July 26, 1995, why a fine should not be assessed against LMIC "because of its failure to comply within thirty (30) days with written directives of the Louisiana Insurance Rating Commission." Attached to the order was a copy of a letter dated June 3, 1995, from LIRC Commissioner Doug Foreman to Neil Koenig of Citgo, informing him that the LMIC/Citgo wrap-up insurance policy had to be submitted to LIRC for approval prior to its implementation.
On July 13, 1995, LMIC, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, and LM Insurance Corporation (Liberty Mutual) filed a pleading captioned "Petition for Preliminary and Permanent Injunctions, Petition for Declaratory Judgment and Petition to Nullify Certain Actions Taken by the Louisiana Insurance Rating Commission at its June 21, 1995 Meeting" in the Nineteenth Judicial District Court. Named as defendants were LIRC, James H. Brown, the Commissioner of Insurance, Carl J. Barbier, *1024 Byron Briggs, Michael Franks, Thomas Besselman, Charles Kirsch, Jr., and Doug Foreman, named in their official capacities as commissioners of LIRC.[3] In the petition, Liberty Mutual sought preliminary and permanent injunctions quashing LIRC's order to show cause set for hearing on July 26, 1995, invalidating Bulletin LIRC 95-03 in its entirety, prohibiting the defendants from exerting their regulatory authority over the LMIC/Citgo wrap-up insurance program or any other future programs, and prohibiting the defendants from taking retaliatory action against Liberty Mutual. In addition, Liberty Mutual sought a declaratory judgment decreeing that the defendants and their employees and agents had no regulatory authority to investigate or interfere with wrap-up insurance programs implemented with the inclusion of insurance rates previously approved by LIRC, and decreeing that the actions taken by LIRC at the June 21, 1995 meeting, including the issuance of the Order to Show Cause to LMIC and the issuance of Bulletin LIRC 95-03, were violative of the Louisiana Open Meetings Law and without effect. Liberty Mutual also sought an award of attorney fees.
At its July 26, 1995 meeting, LIRC voted to set aside the Order to Show Cause issued to LMIC on June 26, 1995.
On July 28, 1995, Citgo filed a petition of intervention, seeking relief against the defendants similar to that sought by Liberty Mutual.
A hearing on the preliminary injunction was held on August 2, 1995. At the conclusion of the hearing, the trial court took the matter under advisement, the parties subsequently filed post-trial memoranda, and on December 8, 1995, the trial court signed a "Judgment on Rule for Preliminary Injunction" which stated, in pertinent part:
IT IS ORDERED, ADJUDGED AND DECREED that, upon the posting of bond in the amount of $5,000.00, a preliminary injunction in favor of [Liberty Mutual] issue herein against [the defendants], restraining, enjoining, and prohibiting them... from regulating or attempting to regulate the direct issuance by Liberty Mutual of a commercial general liability insurance policy and a workers' compensation insurance policy at the request of [CITGO] in conjunction with construction and maintenance projects undertaken for CITGO as owner and under such further terms and conditions by which CITGO pays the premiums for such policies based on rates and forms filed with and approved by [LIRC], and the general contractor and its subcontractors on such projects as well as CITGO as owner of the projects are named insured, such programs commonly referred to within the insurance industry as consolidated insurance programs, owner controlled insurance programs or wrap up insurance programs.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that ... a preliminary injunction in favor of [Liberty Mutual] issue herein against [the defendants], restraining, enjoining and prohibiting them ... from conducting any future inquiries into Liberty Mutual's wrap up insurance programs, its consolidated insurance programs, owner controlled insurance programs or similar programs in Louisiana[,] based on rates and forms filed with and approved by [LIRC], including but not limited to Liberty Mutual's program in place with [CITGO].
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that ... a preliminary injunction in favor of [Liberty Mutual] issue herein against [the defendants], restraining, enjoining and prohibiting them ... from conducting any future inquiries into Liberty Mutual's wrap up insurance programs, its consolidated insurance programs, owner controlled insurance programs or similar programs in Louisiana.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs have established a prima facie case that it is more likely than not that Bulletin LIRC 95-03 is a "rule" as set forth in La. R.S. *1025 49:951(6), that the requirements enunciated in Bulletin LIRC 95-03 are not issued in accordance with the Louisiana Administrative Procedures [sic] Act, and pursuant to La. R.S. 49:963, Bulletin LIRC 95-03 will be declared to be null, void and of no effect. (Emphasis added.)
The defendants appeal from the judgment on the preliminary injunction, asserting the following assignments of error:
1. The trial court erred in issuing a preliminary injunction in that Liberty Mutual failed to establish any grounds at the trial thereon that would support the granting of such extraordinary relief.
2. The trial court erred in finding, preliminarily, that Bulletin LIRC 95-03 is a rule which must be adopted in accordance with the notice and comment procedures of the Louisiana Administrative Procedure Act.

DOES BULLETIN LIRC 95-03 CONSTITUTE A RULE WITHIN THE MEANING OF THE LOUISIANA ADMINISTRATIVE PROCEDURE ACT?
In its judgment, the trial court declared that Bulletin LIRC 95-03 would be declared of no effect because it was more likely than not that it was a rule which was not issued in accordance with the rulemaking requirements of the LAPA. The defendants argue that the trial court erred in this determination.
There is no dispute that LIRC is a state agency subject to the rulemaking requirements of the LAPA. See La. R.S. 49:951(2). Louisiana Revised Statute 49:953, which sets forth the procedure for the adoption of rules, requires an agency to publish notice of its intent to adopt, amend, or repeal any rule in the Louisiana Register. La. R.S. 49:953(A)(1)(b)(i). The agency must provide interested persons with copies of the intended rule, and it must offer them a reasonable opportunity to respond. La. R.S. 49:953(A)(2)(a) and (2)(b)(i). No rule shall be effective, nor may it be enforced, unless it was adopted in substantial compliance with the provisions of the LAPA. La. R.S. 49:954(A). Further, no rule shall be effective or enforceable unless (1) it was properly filed with the State Register, (2) a report on the rule was submitted to the legislature in accordance with La. R.S. 49:968, and (3) the approved economic and fiscal impact statements required by La. R.S. 49:953(A) were filed with the Department of the State Register and published in the Louisiana Register. An administrative rule adopted in accordance with the requirements of the LAPA generally becomes effective upon its publication in the Louisiana Register. La. R.S. 49:954(B). Unfortunately, many state agencies routinely ignore these provisions of law.
In this case, it is not disputed that LIRC did not satisfy any of the rulemaking requirements of the LAPA prior to the issuance of Bulletin LIRC 95-03. LIRC argues that these procedures were unnecessary because the bulletin is not a "rule" and that the trial court erred in finding to the contrary. According to LIRC, Bulletin LIRC 95-03 is an investigatory order to the extent it orders that insurers file wrap-up plans so that LIRC can ascertain if they comply with the law, and is an "interpretive directive"[4] to the extent that it explains LIRC's understanding of wrap-ups and La. R.S. 23:1174.1. LIRC argues that the bulletin is not substantive and does not impose obligations not already required by existing law. On the other hand, Liberty Mutual and Citgo contend that Bulletin LIRC 95-03 does constitute a "rule" which imposes substantive duties on insurers which did not previously exist. They argue that the submission of wrap-up policies to LIRC for approval prior to implementation was not required before the promulgation of the bulletin, as long as premiums charged were in compliance with previously approved rates.
The LAPA, La. R.S. 49:951(6), defines a "rule" as follows:
*1026 "Rule" means each agency statement, guide, or requirement for conduct or action, exclusive of those regulating only the internal management of the agency and those purporting to adopt, increase, or decrease any fees imposed on the affairs, actions, or persons regulated by the agency, which has general applicability and the effect of implementing or interpreting substantive law or policy, or which prescribes the procedure or practice requirements of the agency. "Rule" includes, but is not limited to, any provision for fines, prices or penalties, the attainment or loss of preferential status, and the criteria or qualifications for licensure or certification by an agency. A rule may be of general applicability even though it may not apply to the entire state, provided its form is general and it is capable of being applied to every member of an identifiable class. The term includes the amendment or repeal of an existing rule but does not include declaratory rulings or orders or any fees.
We agree with the trial court's conclusion that Bulletin LIRC 95-03 constitutes a rule as defined above.[5] First, the bulletin constitutes a statement regarding wrap-up insurance by LIRC which has general applicability to all insurers issuing this type of insurance in Louisiana. Further, it contains LIRC's interpretation of the definition of wrap-up insurance and has the effect of interpreting LIRC's substantive policy regarding the use of wrap-up insurance policies in Louisiana; that is, LIRC clearly "directs that insurers must file for approval of all rates and rules comprising wrap-up programs with the LIRC." In requiring that insurers submit wrap-up programs for approval, the bulletin sets forth three specific substantive criteria which must be considered in the filing of any insurer submitting a plan to LIRC for approval. Each of the criterion provides some type of limitation on the use of wrap-up programs in the insurance industry. It can hardly be said that these pronouncements by *1027 LIRC serve merely an "investigative" or "interpretive" function without substantive effect. See Star Enterprise v. State, Department of Revenue and Taxation, 95-1980, 95-1981, 95-1982 (La.App. 1st Cir. 6/28/96), 676 So.2d 827, 831-832. Therefore, we find no error in the trial court's determination that Bulletin LIRC 95-03 constitutes a rule within the meaning of the LAPA.
We further note that, in addition to constituting a "rule," Bulletin LIRC 95-03 probably constitutes an invalid rule. That is, the requirements imposed on insurers in the bulletin appear to be in excess of LIRC's statutory authority which is contained in Part XXX of Chapter 1 of the Insurance Code, La. R.S. 22:1401-1447. Since both parties agree that previously approved rates and forms were used in conjunction with the wrap-up policy at issue, LIRC's action in issuing the bulletin in all likelihood exceeds its authority to regulate rates.

JUDICIAL REVIEW OF AN AGENCY RULE UNDER THE LOUISIANA ADMINISTRATIVE PROCEDURE ACT
Having concluded that Bulletin LIRC 95-03 constitutes a rule within the meaning of the LAPA, and because, in its first assignment of error, LIRC takes exception with the issuance of injunctive relief in this case, we must determine whether Liberty Mutual properly challenged the rule's validity or applicability.
The laws creating LIRC and governing the scope of its authority are found in Part XXX of Chapter 1 of the Insurance Code, La. R.S. 22:1401-1447. Pursuant to La. R.S. 22:1446, LIRC has the authority to make rules and regulations to enforce, carry out, and make effective the provisions of La. R.S. 22:1401-1447. However, this statutory scheme by which LIRC is granted rulemaking authority does not provide for a procedure by which a challenge to a LIRC rule is to be made. Therefore, the appropriate method of challenge must be found in another statutory source.
In determining the applicability of laws, the more specific governs over the more general. In the Interest of A.C., 93-1125 (La.1/27/94), 643 So.2d 719, 730, cert. denied, 515 U.S. 1128, 115 S.Ct. 2291, 132 L.Ed.2d 292 (1995); Carver v. State, Department of Public Safety and Corrections, Office of State Police, Video Gaming Division, 95-1664 (La.App. 1st Cir. 4/4/96), 672 So.2d 1141, 1143-1144, writ denied, 96-1528 (La.9/27/96), 679 So.2d 1349. With regard to administrative agencies, the more specific laws are those which govern the agency; these specific laws govern over the more general laws of the LAPA or of the Louisiana Code of Civil Procedure. See Corbello v. Sutton, 446 So.2d 301, 303 (La.1984). Where agency laws are silent, however, as is the case herein, it is the function of the LAPA, not the more general Louisiana Code of Civil Procedure, to fill in the gaps and to provide rules for procedure.
If agency laws are silent, and the challenge to an agency rule is based upon the grounds that the rule is unconstitutional or exceeds the statutory authority of the agency, or was adopted without substantial compliance with rulemaking procedure, the appropriate and only remedy is an action for declaratory judgment under La. R.S. 49:963(C) of the LAPA. Bueto v. Video Gaming Division, Office of State Police, Department of Public Safety, 94-0334 (La. App. 1st Cir. 3/4/94), 637 So.2d 544, 546; Louisiana Chemical Association v. Department of Environmental Quality, 577 So.2d 230, 233 (La.App. 1st Cir.1991). An action for a declaratory judgment under La. R.S. 49:963 may be brought only after (1) the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question, and (2) only upon a showing that review of the validity and applicability of the rule in conjunction with review of a final agency decision in a contested adjudicated case would not provide an adequate remedy at law,[6] and (3) would inflict irreparable injury. *1028 La. R.S. 49:963(D). As stated, where the LAPA is applicable, the declaratory judgment action provided for in La. R.S. 49:963 is the only remedy available for judicial review of the validity of an agency rule. Bueto v. Video Gaming Division, Office of State Police, Department of Public Safety, 637 So.2d at 547.
The record contains no evidence that the requirements of La. R.S. 49:963(D) were complied with in this case. In fact, the record reveals that the declaratory judgment sought by Liberty Mutual and Citgo and granted by the trial court resulted from the application of La. C.C.P. art. 1871 et seq., which provide for declaratory judgments at the trial court level of regular civil proceedings.[7] In light of the more specific requirements contained in La. R.S. 49:963(D) regarding the availability of a declaratory judgment in an administrative setting, the trial court should have proceeded in accordance with that provision of the LAPA, rather than with the more general provisions of La. C.C.P. art. 1871 et seq.
It must be noted that the declaratory judgment provided for in La. R.S. 49:963(D) is notably different from the declaratory judgment provided for in La. C.C.P. art. 1871 et seq. In 1960, when the legislature incorporated the Uniform Declaratory Judgments Act into the then new Louisiana Code of Civil Procedure, Dean Henry G. McMahon noted that a significant change had been made to La. C.C.P. art. 1871, the basic article for declaratory judgments. Previously the Declaratory Judgment Act in Louisiana was the same as existed in all other states in the union. Under the Act, both in Louisiana and throughout the country, a declaratory judgment was not available if another remedy existed at law. The fulfillment of this condition prior to the use of declaratory judgment was specifically upheld by the Louisiana Supreme Court in Burton v. Lester, 227 La. 347, 79 So.2d 333 (1955). However, in 1960, the following new language was added to the end of the second sentence of La. C.C.P. art. 1871: "... and the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate...." As the comments to La. C.C.P. art. 1871 indicate, it was with the specific purpose of overruling the Burton case that the quoted language was added. Thus, under the Louisiana Code of Civil Procedure, declaratory judgments are available notwithstanding the existence of another adequate remedy.
However, it can be seen from the plain language of La. R.S. 49:963(D) that the LAPA is referring to the "old type" of declaratory judgment and definitely requires that there be no other adequate remedy under administrative law before a LAPA declaratory judgment action may be brought. For instance, had LIRC taken adjudicative action against Liberty Mutual in this case, Liberty Mutual could have raised the invalidity of Bulletin LIRC 95-03 as a defense in an action for judicial review of the adjudication under La. R.S. 49:964.[8] The availability of such a remedy under La. R.S. 49:964 precludes the use of a declaratory judgment action under La. R.S. 49:963. Further, the LAPA declaratory judgment action is available only after the plaintiff has requested the agency to pass upon the validity or applicability of the rule at issue and only upon a showing of irreparable injury. Thus, the trial court committed legal error in issuing a declaratory judgment regarding the validity of Bulletin LIRC 95-03 in the absence of a showing by Liberty Mutual that the requirements of La. R.S. 49:963(D) had been met.
When the trial court applies the wrong law, no weight should be accorded to its judgment. Otto v. State Farm Mutual *1029 Automobile Insurance Company, 455 So.2d 1175, 1177 (La.1984). Because we are required to reverse the trial court judgment insofar as it declares Bulletin LIRC 95-03 to be of no effect, we are also required to reverse the judgment insofar as it grants injunctive relief in favor of Liberty Mutual. According to Bueto v. Video Gaming Division, Office of State Police, Department of Public Safety, 637 So.2d at 547-548, injunctive relief is available to enforce a La. R.S. 49:963(D) declaratory judgment only after the determination is made that the declaratory judgment is appropriate. Because the trial court erred by issuing a declaratory judgment without following the constraints of La. R.S. 49:963(D), the injunctive relief must fall.

DECREE
For the foregoing reasons, the judgment of the trial court is REVERSED in its entirety. This matter is REMANDED to the trial court which is ordered to direct Liberty Mutual to apply to LIRC for reconsideration of the validity of Bulletin LIRC 95-03 in light of the views expressed herein. The total costs of this appeal in the amount of $886.06 is to be assessed equally between Liberty Mutual and LIRC.

ON REHEARING
GONZALES, Judge.
On application for rehearing, both sides in this case complain of this Court's ruling. LIRC basically complains that this Court went too far in finding its rule invalid. On the other hand, Liberty Mutual complains that our opinion did not go far enough by granting to it numerous requests for relief. We invite both sides to more carefully read the opinion rendered in this matter, and they will find that their positions are misplaced.

INVALIDITY OF BULLETIN LIRC 95-03
LIRC complains that our opinion went too far in declaring Bulletin LIRC 95-03 invalid. On page 8 of our opinion, after analyzing whether or not the bulletin was a rule, we noted, in part, as follows:
We further note that, in addition to constituting a "rule," Bulletin LIRC 95-03 probably constitutes an invalid rule.... LIRC's action in issuing the bulletin in all likelihood exceeds its authority to regulate rates. [Emphasis added].
This statement about the possible invalidity of Bulletin LIRC 95-03 is not the rule of decision in our opinion; we reversed the trial court judgment because it was not rendered in conformity with the procedural requirements of La. R.S. 49:963. Although the above language is a clear expression by this panel of its views about the validity of the rule, it is only dicta which expresses our opinion regarding the validity of the rule, and is not a substantive finding that it is in fact invalid. The actual validity of the rule can be challenged by Liberty Mutual, as will be discussed in the following analysis. Therefore, LIRC's complaint on rehearing is without merit.

STRINGENT REQUIREMENTS OF LA. R.S. 49:963
Liberty Mutual's basic complaint on rehearing is that it does not like the law. Most of the issues Liberty Mutual raises concern the stringent requirements of La. R.S. 49:963(D).
It is true there are some serious problems with La. R.S. 49:963(D). The statute is so restrictive in limiting review of administrative rules that it may be violative of due process. The part of the statute that requires exhaustion of administrative remedies is not a problem, and it is a common provision in administrative law.[1] However, the further dual restriction of Section 963(D), requiring the absence of any other remedy, and a showing of irreparable harm, places such an enormous burden on the party challenging the rule as almost to leave that party without any remedy whatsoever. Further, by providing a means to attack procedurally defective agency rules, but allowing such an attack only when there is no other remedy *1030 available, Section 963(D) poses a legal "catch 22" which undermines the effectiveness of administrative law. The legislature in this State is the primary lawmaker and, if any reform or modification to Section 963(D) is to be made, it must be done by that legislature, or by our supreme court when faced with a constitutional issue.
Louisiana Revised Statute 49:963 was almost entirely outmoded at the time of its adoption. It is apparently derived from a combination of the provisions of the 1946 version of the federal Administrative Procedure Act (federal APA) (Act June 11, 1946, c. 324, 60 Stat. 237) and the Model State Administrative Procedure Act of 1961 (Model Act). However, subsequent revisions to both the federal APA and to the Model Act have eliminated many of the problems presented by Section 963. Further, as noted in our original opinion, the revision to the Louisiana Code of Civil Procedure relative to declaratory judgments eliminated the requirement of no other remedy and had legislatively overruled the Burton v. Lester rationale. Despite all these improvements and recommendations for change in the declaratory judgment law on both the federal and state levels, our legislature has not seen fit to address these problems in La. R.S. 49:963.
The rest of Liberty Mutual's complaints about inconvenience and multiple litigation generated by the strict compliance with La. R.S. 49:963(D) are well taken but beyond the scope of our power to review. Administrative law and administrative agencies regulate and supervise the vast majority of industries in the State of Louisiana. These industries operate on a business basis and are desirous of knowing full implications of rules before large investments are made. It is entirely unjustifiable to expect that industries will make major commitments of capital or improvements in existing installations without knowing the full extent to which administrative regulations will serve as a handicap or impediment. Accordingly, such industries desire and seek through declaratory judgments an advanced ruling on the exact extent of administrative rules before making such capital improvements. Unfortunately, under our present scheme of law, such declaratory rulings are generally not available from a Louisiana court. The present scheme requires that industries ignore regulations and make mass investments of capital on the hope that when the regulation is attempted to be enforced, the industry will have the ability to attack the validity of the rule or regulation in question. In other words, we in Louisiana tell our industry that they simply have to take their chances in enforcement proceedings before they can have any real attempts at challenging the validity of a rule. Any industry seeking to locate in Louisiana or to increase their investments in Louisiana understandably would be reluctant to take such a chance. This is the fundamental reason why the Louisiana legislature needs to address the stringent requirements of La. R.S. 49:963(D) and remove from its provision the requirement of an alternate remedy in an adjudication hearing as a condition for granting a declaratory judgment. We are entirely sympathetic with the position of Liberty Mutual and the others associated with regulated industries in Louisiana, but the resolution of this issue clearly lies in the hands of our state legislature.

REMAINING ISSUES
Liberty Mutual further suggests that our opinion in this matter is in conflict with an earlier opinion of this circuit, Star Enterprise v. State, Department of Revenue and Taxation, 95-1980, 95-1981, 95-1982 (La.App. 1st Cir. 6/28/96), 676 So.2d 827. Liberty Mutual's reliance on this case is completely misplaced because the Star Enterprise court clearly found that the judicial review provisions of La. R.S. 49:963 were not applicable to the rules of the Department of Revenue and Taxation.[2] Thus, its decision was not *1031 based on an interpretation of La. R.S. 49:963. The Star Enterprise court went on to point out that, even though judicial review of rules of the Department of Revenue and Taxation was not available under La. R.S. 49:963, such review was available under the Louisiana Constitution and under the rationale of Moore v. Roemer, 567 So.2d 75 (La.1990). Star Enterprise v. State, Department of Revenue and Taxation, 676 So.2d at 833. On the other hand, our ruling in the original hearing was entirely based on the provisions of La. R.S. 49:963(D) and simply points out that the statute means what it says and must be followed. Therefore, the Star Enterprise opinion is not dispositive of the issues raised herein.
Finally, we address Liberty Mutual's argument that the trial court was the proper forum to address the alleged unconstitutionality of Bulletin LIRC 95-03. In its "Judgment on Rule for Preliminary Injunction," the trial court declared the bulletin to be a rule, that it was not issued in accordance with the rulemaking requirements of the LAPA, and was, therefore, "null, void and of no effect." Based on its conclusion that the rule was statutorily invalid because not issued in accordance with the LAPA, the trial court did not have to reach the issue of the constitutionality of the rule. Generally, courts will not address constitutional issues when the case can be disposed of on the basis of nonconstitutional issues. Blanchard v. State, Parks and Recreation Commission, 96-0053 (La.5/21/96), 673 So.2d 1000, 1002.
In our original opinion, we affirmed the trial court's finding that Bulletin LIRC 95-03 was a rule. Although not expressly stated in the original opinion, we now affirmatively state our agreement that the rule was statutorily invalid because not issued in accordance with the rulemaking requirements of the LAPA. Therefore, there is no reasons to address the alleged unconstitutionality of Bulletin LIRC 95-03.
For the above reasons, the applications for rehearing filed by LIRC and by Liberty Mutual are DENIED.
NOTES
[1] In its judgment on the rule for preliminary injunction, the trial court also found that Liberty Mutual had established a prima facie case in its favor on two other issues: (1) the alleged violation of the Louisiana Open Meetings Law, and (2) the effect of LIRC's issuance and subsequent revocation of the Order to Show Cause against Liberty Mutual. Based on the assignments of error alleged in this appeal, these issues are not before this court.
[2] In Bulletin LIRC 95-03, dated June 21, 1995, LIRC defined "wrap-up insurance" as: a policy that covers exposures for a large group. Each member of the group is connected to other members by one or more common insuring characteristics. For example, wrap-up insurance can be written for all the various businesses working together on a special project. Wrap-up insurance as used in this Bulletin includes owner controlled insurance programs.
[3] According to La. R.S. 22:1401(A), LIRC shall be composed of seven members, six of whom shall be appointed by the governor, and the seventh member shall be the commissioner of insurance.
[4] Although the concept of "interpretive directive" is not contained in the LAPA, Section 962 of the LAPA does address the similar concept of "declaratory orders." This provision mandates that each agency provide by rule for the filing and prompt disposition of petitions for declaratory orders and rulings as to the applicability of any statutory provision or of any rule or order of the agency. The existence of such a rule within LIRC's regulatory scheme is unknown.
[5] Bulletin LIRC 95-03 reads as follows:

Bulletin LIRC 95-03
DATE: June 21, 1995
TO: All Property and Casualty Insurance Companies and Rating Organizations Making Rate and Rule Filings in Louisiana
RE: Wrap-Up Insurance
This bulletin clarifies issues surrounding wrap-up insurance and sets forth directives of the Louisiana Insurance Rating Commission (LIRC).
"Wrap-up insurance" is defined as a policy that covers exposures for a large group. Each member of the group is connected to other members by one or more common insuring characteristics. For example, wrap-up insurance can be written for all the various businesses working together on a special project. Wrap-up insurance as used in this Bulletin includes owner controlled insurance programs.
The LIRC requires that wrap-up insurance rates and rules be filed with and approved by the LIRC before they can be used in Louisiana. A wrap-up insurance filing must adhere to directives contained in all LIRC Bulletins and must conform to all Louisiana [s]tatutes.
To avoid unnecessary delays in the approval process, a wrap-up insurance filing coming before the LIRC must consider the following:
(1) Louisiana Revised Statute 23[:]1174.1 prohibits a wrap-up insurance program which discriminates "based upon the contractor's or subcontractor's securing the employer's workers[`] compensation obligation by any method provided for in R.S. 23[:]1168 and/or R.S. 23 [:]1191 through 23[:]1193."
(2) A wrap up insurance program must neither take away nor reduce the right and ability for the individual contractor to choose the best method to insure the individual contractor's risk.
(3) A wrap up insurance program must allow for coordination of coverages between the wrap-up policy and individual contractor policies without placing a burden upon the individual contractor or the contractor's chosen insurer. A burden exists when the wrap-up policy results in duplicate coverages or higher costs to the individual contractor.
In the past there has been confusion regarding the filing requirements for wrap-up programs. Under the authority pursuant to R.S. 22[:]1402, 22[:]1403, 22[:]1404.(3)(b) and 22[:]1407, the LIRC directs that insurers must file for approval of all rates and rules comprising wrap-up programs with the LIRC. Such programs must comply with LIRC and Louisiana statutes, regulations, rules, and directives. Wrap-up programs currently in use and not previously filed with the LIRC must comply with the directives of this Bulletin and file with the LIRC no later than August 2, 1995[,] 12:00 pm[.] (The cutoff for the August 16, 1995 LIRC agenda).
If there are questions[,] call LIRC staff at (504) 342-5202.
s/Chris Faser, III
Chris Faser, III
Deputy Commissioner/LIRC

[6] If a regulated party can attack a rule in connection with an enforcement, a license revocation, restriction, denial, or other contested adjudicative action, and receive a remedy of reversal based on the invalid rule, he has no standing under La. R.S. 49:963(D). In other words, if relief is available to a plaintiff under La. R.S. 49:964, he cannot use the declaratory judgment provisions under La. R.S. 49:963(D).
[7] The Nineteenth Judicial District Court was the proper court of appellate review of a LIRC rule under La. R.S. 49:963(D). Sitting in an appellate mode, the trial court was bound by the appellate review provisions of La. R.S. 49:963 and had no authority to apply the declaratory judgment provisions of the Louisiana Code of Civil Procedure, as these provisions only apply when the trial court is sitting as a trial court, not as an appellate court.
[8] We note that, although LIRC issued an Order to Show Cause against LMIC, LIRC voted to set aside the order on June 26, 1995.
[1] We note that when a constitutional attack is properly made and addressed, this exhaustion requirement may not be necessary.
[2] The Star Enterprise court stated, 676 So.2d at 833,

We now consider the Department's argument that the trial court lacked subject matter jurisdiction to review the rule and to enjoin its enforcement. First, the Department contends that the trial court was statutorily precluded from determining the validity of the rule under the terms of the LAPA itself. La.R.S. 49:963 provides for judicial review of a rule in an action for a declaratory judgment in the district court in which the agency is located. La.R.S. 49:967 states that the provisions of LAPA shall not apply to the Department of Revenue and Taxation, except for certain enumerated sections of the LAPA. The listing of those provisions of the LAPA that are applicable to the Department does not include the judicial review section of agency rules found in La.R.S. 49:963. [Emphasis added].