JOY COSSICH LOBRANO, Judge.
| ]The plaintiff, Roberto Llopis, D.D.S., appeals the dismissal of his Petition for Judicial Review of Administrative Order/Ruling and/or For Writ of Mandamus; Seeking Declaratory and/or Injunctive Relief; and Civil Penalties and Attorney Fees Pursuant to the Louisiana Open Meetings Law[1] (“Petition”) on peremptory exceptions of no cause of action in favor of the defendants, the Louisiana State Board of Dentistry (“the Board”); C. Barry Ogden, Executive Director of the Board; Brian Bégué, Counsel to the Board; and Rommel Madison, D.D.S., President of the Board.[2] For the reasons that follow, we affirm the trial court judgments.
According to the Petition, Dr. Llopis obtained a license to practice dentistry in Louisiana in 1993. In 2003, the Board commenced an investigation of Dr. Llopis based on his professional conduct, but did not complete it because he was called to active military duty. In 2006, Dr. Llopis surrendered his Louisiana pícense; the Board accepted it with no mention of the 2003 investigation or any sanctions. By 2010, Dr. Llopis was practicing dentistry in Washington State. However, that same year he was offered a teaching position at Louisiana State University School of Dentistry (“LSUSD”). Because the position *1282 required him to have a Louisiana license, in October 2010, Dr. Llopis applied to the Board for a restricted license, which would have allowed him to teach and practice only at LSUSD. On November 1, 2010, Dr. Llopis received an e-mail from A. Dale Ehrlich, D.D.S., a department chairman at LSUSD, indicating that the Board had given him (Dr. Ehrlich) the impression that it would not act on Dr. Llopis’ application any time soon and, without a Louisiana license, he could not teach at the dental school. Thereafter, Dr. Llopis withdrew his application for a restricted license and filed an application for licensure by credentials, based on his Washington license.
The Petition further alleges that on November 16, 2010, counsel for Dr. Llopis contacted the Board, inquiring about a temporary license for his client. Mr. Ogden informed counsel that the Board did not issue temporary licenses. Meanwhile, in a prior telephone conference, Mr. Bégué informed counsel that the Board had never completed its 2003 investigation into Dr. Llopis’ professional conduct and would consider his request for a license as a “Request for Reconsideration of Prior Sanctions.” In a later e-mail, Mr. Bégué informed counsel that in order for Dr. Llopis to obtain a Louisiana license, he would have to re-apply and meet with a Board representative to discuss resolving the 2003 ^investigation and the conditions he would have to meet in the event the Board was to issue him a license.
The Petition continues to allege that on July 19, 2011, Dr. Llopis filed a “Petition for Declaratory Order” with the Board pursuant to Louisiana Administrative Code (“LAC”), Title 46, Part XXXIII, § 1401, and La. R.S. 49:962, requesting the Board to issue a declaration or order addressing the following ten questions:
1.Whether La. R.S. 37:763(0 regarding the surrender of a license to the Board was in full force and effect in November 2006, when Dr. Llopis surrendered his license?
2. Whether, at the time Dr. Llopis surrendered his license in 2006, he was under investigation by the Board or did the Board violate its own statute by accepting the surrender of the license at that time?
3. Whether Dr. Llopis is entitled to apply for a temporary license pursuant to LAC, Title 46, Part XXXIII, § 120?
4. How can Dr. Llopis obtain an application to apply for a temporary license pursuant to LAC, Title 46, Part XXXIII, § 120?
5. Whether LAC, Title 46, Part XXXIII, § 116, titled: Reconsideration of Adverse Sanctions, applies or would apply to any request by Dr. Llopis for a Louisiana dental license at this time considering the circumstances of his case?
6. What is the procedure for submission for a Request for Reinstatement of a license that has never been disciplined, and that was surrendered and accepted without conditions and/or restrictions?
7. What statute(s), rule(s), policy or policies provide(s) the guidelines specific to the procedure for submission of a Request for Reinstatement of a license that has never been disciplined, and that was surrendered and accepted without conditions or restrictions?
|48. What statute(s), rule(s), policy or policies and/or guidelines would require Dr. Llopis to meet with the Board’s counsel or director in order to obtain a Louisiana dental license?
9. What rule(s) provide(s) the time requirements within which the Board *1283 shall act upon an application for a restricted license?
10. What policies and/or guidelines provide the time requirements within which the Board shall act upon an application for a restricted license; and where can such policy, policies and/or guidelines be found?
According to the Petition, the Board placed the Petition for Declaratory Order on the agenda of its August 5, 2011 meeting. At the meeting, Mr. Bégué read each question aloud and suggested a “ruling,” followed by a “sham” motion, a second, and a unanimous adoption by the Board of the “ruling.” On August 8, 2011, counsel for Dr. Llopis contacted the Board, requesting a copy of the Board’s written ruling on his Petition for Declaratory Order within seventy-two (72) hours. When the Board failed to respond, counsel again contacted the Board, threatening to file suit in the district court to enforce his client’s rights under the Open Meetings Law and the Louisiana Administrative Procedure Act[3] (“APA”). The Board responded by providing Dr. Llopis with a copy of the minutes from its August 5, 2011 meeting rather than an official order.
Dissatisfied with the Board’s action, Dr. Llopis filed the Petition in the district court, asserting that the Board violated the Open Meetings Law by adopting Mr. Bégué’s recommendations without discussion. Dr. Llopis asked the court to: 1) declare the Board’s voting procedure in violation of the Open Meetings Law; 2) enjoin the Board from enforcing its answers to his questions; 3) declare the rulings |sof the Board void under the Open Meetings Law; 4) order the Board to address his Petition for Declaratory Order in an open meeting and issue an order in compliance with the APA; and, 5) award penalties, attorney fees and costs as provided for in the Open Meetings Law.
Mr. Bégué raised an exception of no cause of action. The Board, Mr. Ogden and Dr. Madison, collectively, raised an exception of no cause of action while the remaining Board members[4] and Mr. Burk-halter, collectively, raised exceptions of no cause of action and insufficiency of service of process.
Following a hearing, the trial court rendered a judgment on March 14, 2012, sustaining the exception of no cause of action in favor of Mr. Bégué. Because the judgment failed to specifically dismiss Mr. Bé-gué as a defendant, he filed an Ex Parte Motion to Dismiss, asking the court to dismiss him from the suit. On April 4, 2012, the trial court granted the motion.
Meanwhile, the trial court had rendered a judgment on April 3, 2012, that sustained the exceptions of no cause of action in favor Mr. Ogden and Mr. Burkhalter as to the claims pertaining to the Open Meetings Law. The court also sustained the exception of insufficiency of service of process in favor Mr. Burkhalter and the individual Board members, except Dr. Madison, dismissing without prejudice the suit against them.
On April 19, 2012, the Board, Dr. Madison and Mr. Ogden (the remaining defendants in the case) filed an exception of no cause of action as to Dr. Llopis’ claims for “judicial review and administrative order/ ruling and/or for writ of mandamus; or declaratory and/or injunctive relief,” ie., the claims the trial court | fidid not consider at the initial hearing. Following a hearing, the trial court rendered a judgment on July 9, 2012, decreeing that the minutes of the August 5, 2011 meeting constituted an *1284 “Order of the Board,” and sustaining the exception of no cause of action, dismissing Dr. Llopis’ claim for judicial review as to all parties.
Dr. Llopis appealed the March 14 and April 4, 2012 judgments in favor of Mr. Bégué; the April 3, 2012 judgment insofar as it sustained the exception of no cause of action in favor of Mr. Ogden;[5] and, the July 9, 2012 judgment.[6]
On appeal, Dr. Llopis argues that the trial court erred in sustaining the exceptions of no cause of action in favor of Mr. Bégué and Mr. Ogden, as to his claims regarding the Open Meetings Law. He also contends that trial court erred in granting the exceptions of no cause of action in favor of the Board, Dr. Madison and Mr. Ogden, dismissing his claims for judicial review of the Board’s ruling on his Petition for Declaratory Order.
In reviewing a trial court’s ruling on an exception of no cause of action, the appellate court conducts a de novo review. Industrial Companies, Inc. v. Durbin, 2002-0665, pp. 6-7 (La.1/28/03), 837 So.2d 1207, 1213. “The function of the peremptory exception of no cause of action is to question whether the law extends a remedy against the defendant under the factual allegations of the petition.” Hoag v. State, 2004-0857, p. 9 (La.12/1/04), 889 So.2d 1019, 1025. “The peremptory exception of no cause of action is designed to test the legal sufficiency of the petition by determining whether the particular plaintiff is afforded a remedy in law based on the facts alleged in the pleading.” Id. No evidence may be [7introduced to support or controvert the objection that the petition fails to state a cause of action. La. C.C.P. art. 931. “The exception is triable on the face of the petition and, for the purpose of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true.” Industrial Companies, Inc., 2002-0665, p. 6, 837 So.2d at 1213.
La. R.S. 42:14, relative to meetings of public bodies to be open to the public, provides:
A. Every meeting of any public body shall be open to the public unless closed pursuant to R.S. 42:16,17, or 18.
B. Each public body shall be prohibited from utilizing any manner of proxy voting procedure, secret balloting, or any other means to circumvent the intent of this Chapter.
C. All votes made by members of a public body shall be viva voce and shall be recorded in the minutes, journal, or other official, written proceedings of the body, which shall be a public document.
D. Except school boards, which shall be subject to R.S. 42:15, each public body conducting a meeting which is subject to the notice requirements of R.S. 42:19(A) shall allow a public comment period at any point in the meeting prior to action on an agenda item upon which a vote is to be taken. The governing body may adopt reasonable rules and restrictions regarding such comment period.
La. R.S. 42:13(A) defines “meeting” and “public body” as follows:
*1285 (1) “Meeting” means the convening of a quorum of a public body to deliberate or act on a matter over which the public body has supervision, control, jurisdiction, or advisory power. It shall also mean the convening of a quorum of a public body by the public body or by another public official to receive information regarding a matter over which the public body has supervision, control, jurisdiction, or advisory power.
|r(2) “Public body” means village, town, and city governing authorities; parish governing authorities; school boards and boards of levee and port commissioners; boards of publicly operated utilities; planning, zoning, and airport commissions; and any other state, parish, municipal, or special district boards, commissions, or authorities, and those of any political subdivision thereof, where such body possesses policy making, advisory, or administrative functions, including any committee or subcommittee of any of these bodies enumerated in this paragraph.
Regarding civil penalties for violations of the Open Meetings Law, La. R.S. 42:28 provides:
Any member of a public body who knowingly and wilfully participates in a meeting conducted in violation of this Chapter, shall be subject to a civil penalty not to exceed one hundred dollars per violation. The member shall be personally liable for the payment of such penalty. A suit to collect such penalty must be instituted within sixty days of the violation.
Mr. Ogden and Mr. Bégué are not “public bodies” as defined in La. R.S. 42:13. Although a member of a public body who knowingly and wilfully participates in a meeting conducted in violation of the Open Meetings Law is subject to a civil penalty pursuant to La. R.S. 42:28, Dr. Llopis fails to allege in the Petition that either Mr. Ogden or Mr. Bégué was a member of the Board that acted on his Petition for Declaratory Order at the August 5, 2011 meeting. Absent such an allegation, Dr. Llopis does not have a cause of action against either Mr. Ogden or Mr. Bégué for violating the Open Meetings Law.
Nonetheless, citing Williams v. Board of Trustees for the Employees’ Retirement System of the Parish of East Baton Rouge, 94-1024 (La.App. 1 Cir. 4/7/95), 653 So.2d 1337, and Molinario v. Department of Public Safety and Corrections, 96-2026 (La.App. 1 Cir. 9/23/97), 700 So.2d 992, Dr. Llopis argues Mr. Ogden and Mr. Bégué are “public officers” as defined in La. R.S. 42:1,[7] because they controlled the Board’s voting procedure.
The Williams case involved a suit by the former Parish Attorney for East Baton Rouge Parish who was forced to resign his position after being convicted of three felonies. After his conviction, but before resigning, Williams applied for disability retirement benefits, which were denied. He then sued the Board of Trustees for the Baton Rouge Employees’ Retirement System, appealing the denial of his application and seeking a declaratory judgment as to his rights under the system. The Board raised peremptory exceptions of no cause of action and no right of action, arguing that Williams was not a member of the retirement system when he applied for *1286 disability benefits because, upon his criminal conviction, he was automatically suspended from office pursuant to La. R.S. 42:1411 (the statute requiring automatic removal from office of any public officer who is convicted of a felony). The trial court sustained the exceptions. Williams appealed, arguing that he was not a public officer as contemplated by La. R.S. 42:1411. The First Circuit Court of Appeal disagreed, concluding Williams was a public officer pursuant to La. R.S. 42:1, stating:
If the individual acts as an agent of the state and exercises a portion of the sovereign power or if the office occupied involves a large degree of independence in which the individual is not under the direct supervision and control of an employer, then the individual is a public officer. State v. Haltom, 462 So.2d 662 (La.App. 1st Cir.1984).
Williams, 94-1024, at p. 4, 653 So.2d at 1340. The Court noted that while Williams was not an agent of the state exercising a portion of its sovereign power, his office did enjoy a large degree of independence and was not under the direct control and supervision of his employer, the Metropolitan Council. While the council could authorize Williams to issue written opinions on questions of law involving its official duties and draft ordinances and resolutions, his other duties were not subject to the council’s control. Id. at p. 5, 653 So.2d at 1340.
The Molinario case involved a petition for judicial review pursuant to the Corrections Administrative Remedy Procedure[8] filed by an inmate against the Louisiana Department of Public Safety and Corrections (“DPSC”); Richard Stalder, secretary of DPSC; and an unnamed dental hygienist. Molinario alleged that upon his transfer to Hunt Correctional Facility, the prison dental hygienist terminated his dentist-ordered, soft-meal diet and, as a result, he was unable to eat for several days. Upon judicial review, the court dismissed the petition at Molinario’s costs, and he did not appeal. The defendants subsequently moved to fix attorney’s fees pursuant to La. R.S. 42:261(E) (the statute allowing a public official who successfully defends a suit against him arising out of the performance of the duties of his office to collect attorney’s fees from the party who filed the suit). The trial court denied the request. On appeal, the defendants argued that they were public officials and, therefore, entitled to attorney’s fees. The First Circuit found the dental hygienist was an employee of a state agency and not a public official under the statute. Molinario, 96-2026, at p. 3, 700 So.2d at 993. Although the Court found that Stalder was a public official for purposes of | T 1 determining the applicability of La. R.S. 42:261(E), id. at p. 4, 700 So.2d at 994, it found no evidence that he actually incurred attorney’s fees in defending the suit. Id. at p. 6, 700 So.2d 995. Rather, as the Court pointed out, the Louisiana Attorney General defended the suit against both DPSC and Stalder. Id. at pp. 5-6, 700 So.2d 995. Thus, the Court affirmed the trial court’s denial of the requests for attorney’s fees. Id. at p. 6, 700 So.2d 995.
We find Williams, supra, and Molinario, supra, inapplicable to the present case, because they do not address violations under the Open Meetings Law. Also, neither case holds that the Open Meetings Law provides a cause of action against a person who is not a member of the public body or board simply because he is a public official or an employee of the public body or board.
*1287 Next, Dr. Llopis argues the trial court erred by adjudging that the minutes of the August 5, 2011 board meeting constituted an “Order of the Board.” He claims the Board failed to comply with the procedural requirements of La. R.S. 49:958, by not issuing him a final decision that included findings of fact and conclusions of law.
The defendants, on the other hand, contend that Dr. Llopis filed his Petition for Declaratory Order pursuant to La. R.S. 49:962; thus, the Board’s August 5, 2011 meeting was not an “adjudication proceeding” requiring a final decision under La. R.S. 49:958. They emphasize that La. R.S. 49:962 establishes the procedure by which agencies address the applicability of statutes, rules and orders, while La. R.S. 49:958 applies to adjudication proceedings brought pursuant to La. R.S. 49:955,[9] e.g., the Board intends to take action against a dentist’s license and |12must hold a contradictory hearing to adjudicate the matter. Also, the defendants point out that the procedure for judicial review of declaratory orders and rulings differs significantly from the procedure for judicial review of a final decision or order from an adjudication proceeding. See La. R.S. 49:968 and La. R.S. 49:964.
La. R.S. 49:962, relative to declaratory orders and rulings, provides:
Each agency shall provide by rule for the filing and prompt disposition of petitions for declaratory orders and rulings as to the applicability of any statutory provision or of any rule or order of the agency. Declaratory orders and rulings *1288 shall have the same status as agency-decisions or orders in adjudicated cases.
_JjAt the time Dr. Llopis filed his Petition for Declaratory Order, La. R.S. 49:958,[10] relative to decisions and orders, provided:
A final decision or order adverse to a party in an adjudication proceeding shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. If, in accordance with agency rules, a party submitted proposed findings of fact, the decision shall include a ruling upon each proposed finding. Parties shall be notified either personally or by mail of any decision or order. Upon request, a copy of the decision or order shall be delivered or mailed forthwith to each party and to his attorney of record. The parties by written stipulation may waive, and the agency in the event there is no contest may eliminate, compliance with this Section.
Although La. R.S. 49:962 provides that declaratory orders are given the “same status” as agency decisions in adjudicated cases, they are distinct rulings. La. R.S. 49:951(1) defines “Adjudication” as the “agency process for the formulation of a decision or order” and La. R.S. 49:951(3) defines “Decision” or “order” as:
the whole or any part of the final disposition (whether affirmative, negative, in-junctive, or declaratory in form) of any agency, in any matter other than rule-making, required by constitution or statute to be determined on the record after notice and opportunity for an agency hearing, and including non-revenue licensing, when the grant, denial, or renewal of a license is required by constitution or statute to be preceded by notice and opportunity for hearing. [Emphasis added.]
Jj^The Board’s meeting on August 5, 2011, to consider Dr. Llopis’ Petition for Declaratory Order pursuant to La. R.S. 49:962, was not an agency hearing involving the grant, denial, or renewal of a dental license that required prior notice and an opportunity for hearing. Therefore, the Board, after acting on the petition, was not required to issue a final decision or order in compliance with La. R.S. 49:958. Considering that and the fact that Dr. Llopis alleged that the Board had sent him a draft of the minutes from the August 5, 2011 meeting, evidencing its ruling, we cannot say the trial court erred by ordering the minutes to constitute the “Order of the Board.”
Finally, Dr. Llopis argues that the trial court erred in sustaining the exception of no cause of action in favor of the Board, Dr. Madison and Mr. Ogden, dismissing his claims for judicial review of the Board’s ruling and for declaratory and/or injunc-tive relief.
As mentioned above, Dr. Llopis filed his Petition for Declaratory Order pursuant to La. R.S. 49:962, asking the Board to rule on the validity and/or applicability of various statutes, policies, and rules relating to the licensing process. La. R.S. 49:963 sets forth the procedure for seeking judicial review of the validity or applicability of agency rules and provides, in pertinent part:
A. (1) The validity or applicability of a rule may be determined in an action for declaratory judgment in the district court of the parish in which the agency is located.
*1289 (2) The agency shall be made a party to the action.
[[Image here]]
C. The court shall declare the rule invalid or inapplicable if it finds that it violates constitutional provisions or exceeds the statutory authority of the | ^agency or was adopted without substantial compliance with required rule-making procedures.
D. An action for a declaratory judgment under this Section may be brought only after the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question and only upon a showing that review of the validity and applicability of the rule in conjunction with review of a final agency decision in a contested adjudicated case would not provide an adequate remedy and would inflict irreparable injury.
[[Image here]]
To assert an action for a declaratory judgment under La. R.S. 49:963, the petitioner must demonstrate both the absence of an adequate remedy under administrative law and irreparable injury. See La. R.S. 49:963(D); Liberty Mutual Ins. Co. v, Louisiana Insurance Rating Commission, 96-0793, p. 11 (La.App. 1 Cir. 2/14/97), 696 So.2d 1021, 1028. Furthermore, only after the trial court determines that a declaratory judgment is appropriate under La. R.S. 49:963(D) is injunctive relief available to enforce it. Id. at p. 12, 696 So.2d at 1029 (citation omitted).
In this case, Dr. Llopis alleged in the Petition that the Board’s voting procedure violated the Open Meetings Law and the APA. However, he failed to allege that, in his attempt to obtain a restricted license, he exhausted his administrative remedies or suffered irreparable harm as a result of the Board’s ruling. Therefore, Dr. Llopis failed to state a cause of action for declaratory judgment and/or injunctive relief pursuant to La. R.S. 49:963. Hence, we find the trial court correctly sustained the exceptions of no cause of action in favor of the Board, Dr. Madison and Mr. Ogden, dismissing Dr. Llopis’ Petition.
Accordingly, for the above reasons, the trial court judgments are affirmed.
AFFIRMED.

. La. R.S. 42:11 through 42:28.

. In addition to Dr. Madison, Dr. Llopis sued the other 12 members of the Board. He also sued Peyton "Pete” Burkhalter, Co-Executive Director of the Board. Those 12 board members and Mr. Burkhalter raised exceptions of insufficiency of service of process, which the trial court granted on April 3, 2012, dismissing the suit, without prejudice as to them pursuant to La. C.C.P. art. 932(A). Dr. Llopis did not appeal that ruling; thus, that part of the April 3, 2012 judgment is now final.

. La. R.S. 49:950 et seq.

. See n.2 supra.

. Dr. Llopis also appealed the part of the April 3, 2012 judgment sustaining the exception of no cause of action in favor of Mr. Burkhalter, but that appeal is moot because Mr. Burkhalter is no longer a defendant. See n.2 infra.

. The appellees, save Mr. Bégué, state in their brief that Dr. Llopis did not appeal the July 9, 2012 judgment. However, the record indicates that Dr. Llopis filed a motion and order for devolutive appeal of the July 9, 2012 judgment on July 15, 2012, and the trial court signed the order of appeal on July 19, 2012.

. La. R.S. 42:1 defines "public office” and "public officer” as follows:
As used in this title, the term "public” means any state, district, parish or municipal office, elective or appointive, when the office or position is established by the constitution or laws of this state.
"Public officer” is any person holding a public office in this state.

. La. R.S. 15:1177.

. La. R.S. 49:955, relative to Adjudication; notice; hearing; records, provides:
A. In an adjudication, all parties who do not waive their rights shall be afforded an opportunity for hearing after reasonable notice.
B. The notice shall include:
(1) A statement of the time, place, and nature of the hearing;
(2) A statement of the legal authority and jurisdiction under which the hearing is to be held;
(3) A reference to the particular sections of the statutes and rules involved;
(4) A short and plain statement of the matters asserted.
If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter, upon application, a more definite and detailed statement shall be furnished.
C. Opportunity shall be afforded all parties to respond and present evidence on all issues of fact involved and argument on all issues of law and policy involved and to conduct such cross-examination as may be required for a full and true disclosure of the facts.
D. Unless precluded by law, informal disposition may be made of any case of adjudication by stipulation, agreed settlement, consent order, or default.
E. The record in a case of adjudication shall include:
(1) All pleadings, motions, intermediate rulings;
(2) Evidence received or considered or a resumé thereof if not transcribed;
(3) A statement of matters officially noticed except matter so obvious that statement of them would serve no useful purpose;
(4) Offers of proof, objections, and rulings thereon;
(5) Proposed findings and exceptions;
(6) Any decision, opinion, or report by the officer presiding at the hearing.
F. The agency shall make a full transcript of all proceedings before it when the statute governing it requires it, and, in the absence of such requirement, shall, at the request of any party or person, have prepared and furnish him with a copy of the transcript or any part thereof upon payment of the cost thereof unless the governing statute or constitution provides that it shall be furnished without cost.
G. Findings of fact shall be based exclusively on the evidence and on matters officially noticed.

. La. R.S. 49:958 was amended by Acts 2012, No. 289, § 1, to allow parties to be notified personally, by mail, or by electronic means of any decision or order.