McDONALD, J.
In this case the State of Louisiana, through the Coastal Protection and Restoration Authority (CPRA), appeals a judgment against it and in favor of Bayou Canard Inc., a leaseholder of State water bottoms for oyster bedding purposes. The judgment declared that (1) the harvest efficiency ratio procedure, as defined by La. R.S. 49:951(6), was not properly adopted or promulgated pursuant to La. R.S. 49:953 ; (2) the harvest efficiency ratio was invalid and/or inapplicable as the harvest efficiency ratio procedure exceeds the statutory authority of the State through CPRA, and was adopted without substantial compliance with rulemaking procedures; and (3) CPRA exceeded its statutory authority by applying the harvest efficiency ratio procedure to the acquisition of Bayou Canard's marketable oysters under the Oyster Lease Acquisition and Compensation Program (OLACP). The judgment awarded Bayou Canard reasonable litigation expenses in the amount of $7,500.00, including costs, expenses, and attorney fees, pursuant to La. R.S. 49:965.1(D)(1). After a de novo review, we reverse.
FACTS AND PROCEDURAL HISTORY
Bayou Canard was a leaseholder of State water bottoms for oyster bedding purposes. Lease number 28549-01, dated December 20, 2000, covered 101 acres; lease number 32465-07, dated December 21, 2006, covered 30 acres; and lease number 34777-11, dated December 16, 2010, covered 733 acres. In 2015, CPRA determined that a portion of the water bottoms covered by each lease was located within the direct impact area of a coastal restoration project known as the Shell Island West Restoration Project. By three letters dated August 31, 2015, CPRA notified Bayou Canard that it was acquiring a portion of each lease and that Bayou Canard would be compensated for the acquisitions in accordance with OLACP, La. R.S. 56:432.1 and former La. Admin. Code, Title 43, Part I, §§ 850-869. The acquisitions were effective September 18, 2015. CPRA paid Bayou Canard a total of $174,205.31 to acquire approximately 10.15 percent of the total acreage of the leases.
Bayou Canard filed a petition for injunctive relief and declaratory judgment on October 29, 2015, naming as defendant the State, through CPRA. Bayou Canard maintained that the compensation paid by CPRA for the value of its marketable oysters was based on a harvest efficiency *984 ratio, which resulted in a reduction of compensation. Bayou Canard further maintained that CPRA had generally and uniformly applied the harvest efficiency ratio procedure to every acquisition under OLACP since the inception of the OLACP program, and that, as a State agency engaged in rulemaking, CPRA was required to adopt its rules and regulations in compliance with the Administrative Procedure Act (APA), La. R.S. 49:214.6.2 and La. R.S. 49:951 -953. Bayou Canard asserted that CPRA did not follow the mandatory rulemaking procedure of the APA in adopting the harvest efficiency ratio procedure; thus, it was not a properly adopted rule or regulation of the CPRA. Further, Bayou Canard asserted that CPRA unlawfully reduced its compensation by defining the number of marketable oysters as both seed and market-size oysters as defined by the Louisiana Department of Wildlife and Fisheries (LAC 43:I(B)(855), although the definition of marketable oysters had no reference to the harvest efficiency ratio procedure,
Bayou Canard requested temporary and permanent injunctions enjoining CPRA from enforcing and applying the harvest efficiency ratio procedure; asked that the court issue a preliminary injunction requiring any and all other such acts as the court deemed appropriate for injunctive relief; asked that the court's order remain in full force and effect until such time as the trial court specifically ordered otherwise; requested an expedited trial on the merits and a permanent injunction; and any other equitable and general relief. Bayou Canard maintained that it need not demonstrate irreparable injury to obtain injunctive relief, as CPRA's actions were illegal.
Bayou Canard also requested a judgment declaring that: (1) the harvest efficiency ratio procedure is a rule as defined by La. R.S. 49:951(6) of the APA; (2) the harvest efficiency ratio procedure was not properly adopted or promulgated pursuant to La. R.S. 49:953 of the APA; (3) the harvest efficiency ratio procedure is invalid and inapplicable as it exceeds the statutory authority of CPRA and was adopted without substantial compliance with required rulemaking procedures; and (4) CPRA exceeded its statutory authority by applying the invalid and/or inapplicable harvest efficiency ratio procedure to the acquisition of Bayou Canard's marketable oysters under OLACP. Bayou Canard maintained that it was not required to exhaust any administrative remedies prior to seeking declaratory relief as the harvest efficiency ratio procedure is a rule as defined by La. R.S. 49:951(6) of the APA and was not properly adopted or promulgated in accordance therewith. Bayou Canard also requested an award of reasonable litigation expenses, including costs, expenses, and attorney fees, pursuant to La. R.S. 49:965.1(D)(1).
At a hearing on November 9, 2015, the trial court orally granted the preliminary injunction. Bayou Canard thereafter filed a motion for summary judgment on December 22, 2015, as to the declaratory relief it sought and an award of reasonable litigation expenses pursuant to La. R.S. 49:965.1(D)(1). The motion was heard on February 29, 2016, and denied. Judgment was signed on March 15, 2016. Bayou Canard filed an application for supervisory writs with this court, which was denied. Bayou Canard, Inc. v. State of Louisiana through the Coastal Protection and Restoration Authority , 2016-0404 (La. App. 1 Cir. 6/27/16) (unpublished writ action). Bayou Canard filed an application for supervisory and/or remedial writs with the Louisiana Supreme Court, which was also denied. Bayou Canard, Inc. v. State of Louisiana through the Coastal Protection and Restoration Authority, 2016-1415 (La. 11/15/16), 209 So.3d 786.
*985 CPRA filed a motion for summary judgment on July 21, 2016, which was heard on September 12, 2016. The trial court did not rule on the motion. Bayou Canard filed a second motion for summary judgment on December 16, 2016 seeking the declaratory judgment asked for in its petition and $7,500.00 in litigation expenses.
On March 27, 2017, the trial court heard both CPRA's motion for summary judgment and Bayou Canard's second motion for summary judgment. The trial court granted Bayou Canard's motion for summary judgment and denied CPRA's motion for summary judgment. The trial court signed a judgment denying CPRA's motion for summary judgment on April 28, 2017. The trial court signed a judgment granting Bayou Canard's motion for summary judgment and awarding Bayou Canard $7,500.00 in reasonable litigation expenses on May 2, 2017. CPRA appealed both judgments.
CPRA makes the following assignments of error:
1. The Trial Court erred by allowing this matter to proceed before [Bayou Canard] exhausted its administrative remedies.
2. The Trial Court erred by granting [Bayou Canard's] motion for summary judgment because the [harvest efficiency ratio procedure] is not a rule under La. R.S. 49:951(6) and because genuine issues of material fact existed as to the relationship between [Bayou Canard] and the Louisiana Oyster Task Force and whether [Bayou Canard] was bound by that task force's recommendations.
3. The Trial Court erred by denying the State's motion for summary judgment because the terms of [Bayou Canard's] oyster leases barred [Bayou Canard] from bringing this lawsuit.
4. If granting [Bayou Canard's] motion for summary judgment was proper, the Trial Court erred in awarding [Bayou Canard] attorney fees pursuant to La. R.S. 49:965.1.
THE STANDARD OF REVIEW
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. Samaha v. Rau, 2007-1726 (La. 2/26/08), 977 So.2d 880, 882-883.
A denial of a motion for summary judgment in whole or in part is an interlocutory judgment that is not appealable. Ascension School Employees Credit Union v. Provost Salter Harper & Alford, L.L.C., 2006-0992 (La. App. 1 Cir. 3/23/07), 960 So.2d 939, 940. However, a review of the trial court's denial of CPRA's cross motion for summary judgment is appropriate because the issues involved are identical to those presented by the grant of Bayou Canard's motion for summary judgment. See Board of Sup'rs. of Louisiana State University v. Louisiana Agr. Finance Authority, 2007-0107 (La. App. 1 Cir. 2/08/08), 984 So.2d 72, 78-79, n. 1.
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to *986 negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).
Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can only be seen in light of the substantive law applicable to the case. Pumphrey v. Harris, 2012-0405 (La. App. 1 Cir. 11/2/12), 111 So.3d 86, 89.
ASSIGNMENTS OF ERROR NOS. 1 AND 2
In these two related assignments of error, CPRA asserts that the trial court erred by allowing this matter to proceed before Bayou Canard exhausted its administrative remedies and that the harvest efficiency ratio procedure is not a rule under La. R.S. 49:951(6).
Under the OLACP, an oyster lessee may challenge the propriety of the acquisition of its lease or the compensation offered by CPRA through an administrative hearing. See La. R.S. 56:432.1(C). Such challenges are submitted to an administrative law judge, who issues a final decision to the lessee. See La. R.S. 56:432.1(C)(2), and (3). The lessee is entitled to seek review of the final decision of the administrative law judge. La. R.S. 56:432.1D. A lessee must exhaust its administrative remedies before commencing suit, as follows:
Any petition for judicial review pursuant to this Subsection must be filed with the Nineteenth Judicial District Court within sixty days after issuance of the final decision of the administrative law judge. No petition for judicial review may be filed, and any such petition is premature, unless adjudication has been timely sought and all administrative remedies have been exhausted. The petition shall be served upon the executive director of the [CPRA] and all parties of record.
La. R.S. 56:432.1(D)(1).
Generally, the person aggrieved by an administrative action must exhaust all such administrative remedies before being entitled to judicial review. Girouard v. State Through Dep't of Educ., 96-1076 (La. App. 1 Cir. 5/9/97), 694 So.2d 1153, 1155.
In response, Bayou Canard asserts that La. R.S. 56:432.1D does not apply herein, as they are challenging the validity of a rule. Louisiana Revised Statute 49:963 of the APA provides that:
A. (1) The validity or applicability of a rule may be determined in an action for declaratory judgment in the district court of the parish in which the agency is located.
(2) The agency shall be made a party to the action.
B. (1) If, before the date set for hearing, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court.
(2) The agency may modify its findings and decision by reason of the additional evidence and shall file that evidence and any modifications, new findings, or decisions with the reviewing court.
*987 C. The court shall declare the rule invalid or inapplicable if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was adopted without substantial compliance with required rulemaking procedures.
D. An action for a declaratory judgment under this Section may be brought only after the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question and only upon a showing that review of the validity and applicability of the rule in conjunction with review of a final agency decision in a contested adjudicated case would not provide an adequate remedy and would inflict irreparable injury.
E. Upon a determination by the court that any statement, guide, requirement, circular, directive, explanation, interpretation, guideline, or similar measure constitutes a rule as defined by R.S. 49:951(6) and that such measure has not been properly adopted and promulgated pursuant to this Chapter, the court shall declare the measure invalid and inapplicable. It shall not be necessary that all administrative remedies be exhausted.
Thus, we must first determine whether the harvest efficiency ratio procedure is a rule as defined by La. R.S. 49:951(6). Louisiana Revised Statute 49:951 provides:
(6) "Rule" means each agency statement, guide, or requirement for conduct or action, exclusive of those regulating only the internal management of the agency and those purporting to adopt, increase, or decrease any fees imposed on the affairs, actions, or persons regulated by the agency, which has general applicability and the effect of implementing or interpreting substantive law or policy, or which prescribes the procedure or practice requirements of the agency. "Rule" includes, but is not limited to, any provision for fines, prices or penalties, the attainment or loss of preferential status, and the criteria or qualifications for licensure or certification by an agency. A rule may be of general applicability even though it may not apply to the entire state, provided its form is general and it is capable of being applied to every member of an identifiable class. The term includes the amendment or repeal of an existing rule but does not include declaratory rulings or orders or any fees.
CPRA asserts that the harvest efficiency ratio procedure is not a rule, but rather, an element of the application of the mandatory regulatory factors. CPRA contends that the harvest efficiency ratio procedure is not applied to reduce the compensation due to a lessee; rather, the harvest efficiency ratio procedure is part of the process used to determine the value of the non-removable marketable oysters on the affected acreage.
Bayou Canard maintains that the harvest efficiency ratio procedure is undisputedly a rule under the APA as CPRA generally and uniformly applies the harvest efficiency ratio procedure to every acquisition under OLACP to determine the number of marketable oysters and compensation owed to the leaseholder by law. Bayou Canard cites Star Enterprise v. State, 95-1980 (La. App. 1 Cir. 6/28/96), 676 So.2d 827, writ denied, 96-1983 (La. 3/14/97), 689 So.2d 1383, in support of its position. In that case, three oil refineries sought injunctive relief against enforcement of a new taxation formula adopted by the Department of Revenue via letter. This court found that the new method of valuation was clearly a rule under the APA because it contained a directive to the affected taxpayers to disregard the previous method of valuing refinery gas and coke-on-catalyst, *988 the method was applied generally to all manufacturers, and the method was an interpretation and implementation of a substantive law. This court found that the Department of Revenue's valuation method was a rule unlawfully adopted due to non-compliance with the APA. Star Enterprise, 676 So.2d at 832.
Bayou Canard maintains that similarly, CPRA uses the harvest efficiency ratio procedure as its method to determine a leaseholder's marketable oysters in implementing and paying the compensation owed under OLACP, thus it is an agency rule, which must be adopted pursuant to the APA.
Bayou Canard also cites Women's and Children's Hosp. v. State, Dept. of Health and Hospitals, 2007-1157 (La. App. 1 Cir. 2/8/08), 984 So.2d 760, writ granted, 2008-0946 (La. 6/27/08), 983 So.2d 1287, affirmed by 2008-946 (La. 1/21/09), 2 So.3d 397, in support of its position. In that case, this court considered whether a new Medicaid reimbursement rate methodology was a rule under the APA. This court found that because the Department of Health and Hospitals used rate-setting methodology to calculate payments owed to applicable hospitals, it was a rule that affected the rights and obligations of parties regarding Medicaid reimbursement payments. Women's and Children's Hospital, 984 So.2d at 771.
CPRA notes that it has adopted a rule, La. Admin. Code, Title 43, Part VII, § 311 promulgated December 2015 [formerly La. Admin. Code, Title 43, Part I, § 861 promulgated November 2006]:
A. The secretary shall determine the compensation for any affected acreage to be acquired as follows:
*****
2. If the department provides a time period of less than one year between issuance of a notice of acquisition pursuant to § 313 and the effective date of acquisition, the compensation for the affected acreage to be acquired shall be equal to the fair market value of the affected acreage to be acquired as determined by the secretary in accordance with § 309 plus the value of such non-removable marketable oysters on the affected acreage, if any, as determined by the department, based upon reasonably confirmable data. The determination of value shall take into account the number of sacks of marketable oysters per acre, suitable acreage, natural mortality, current market price, and harvest cost.
CPRA maintains that the harvest efficiency ratio procedure is an appropriate method for applying this rule. The harvest efficiency ratio procedure, it argues, is not part of the formula in the rules and regulations, it is a factor that it applied to the value reached through the rules and regulations.
Nonetheless, after de novo consideration, we find that the harvest efficiency ratio procedure is more than an explanation or interpretation of the rule. Rather, the harvest efficiency ratio procedure provides universal instruction to CPRA and it has the substantive effect of establishing the rights and obligations of the parties regarding reimbursement payments for oyster bed acquisition. Thus, the harvest efficiency ratio procedure is a rule that is unenforceable because it was not properly promulgated and adopted. See Star Enterprise , 676 So.2d at 832 ; Women's and Children's Hospital, 984 So.2d at 771. Accordingly, we find no merit to these assignments of error.
ASSIGNMENT OF ERROR NO. 3
In this assignment of error, CPRA asserts that the terms of Bayou Canard's *989 oyster leases barred Bayou Canard from bringing this lawsuit.
Each lease contains a "Coastal Wetlands Restoration Advisory" clause which provides:
[T]he State as Lessor hereby conveys to Lessee a limited interest in the water bottom which is described in this lease, subject to the conditions that: (1) this lease is subservient to the State's past, present or future coastal restoration projects; (2) the State's coastal restoration projects may cause adverse effects in the area of this lease; and, (3) the State is only issuing this lease based upon the mutual understanding of both the State and Lessee that Lessee's property interest conveyed by this lease shall not include any right whatsoever to make claims against the State as a result of freshwater diversion or any other coastal restoration projects....
Further, the leases contain an "Allocation of Risk and Liability, And Indemnification" clause[1] which provides in part:
Lessee shall assume all liability and risk of loss, and agrees that this lease is subservient to all past, present or future activities as described above. Lessee also agrees to indemnify and hold ... the State of Louisiana, the Wildlife and Fisheries Commission, the United States, and any agency, agent, contractor, or employee thereof, harmless from and for, all loss, damage, costs and/or expense in any way associated with this oyster lease and the oysters, cultch, reefs and beds located therein, including any loss, sustained by the Lessee ... arising out of, connected with, incident to, or directly or indirectly resulting from or related to ... any other action taken for the purpose of coastal protection, conservation, or restoration undertaken by the State of Louisiana, the Wildlife and Fisheries Commission, political subdivisions of the state, the United States, and any agency, agent, contractor, or employee thereof. Damages include, but are not limited to, oyster mortality, oyster disease, damaged oyster beds or decreased oyster production, loss of revenue and/or loss of income....
A lease is a contract. La. C.C. art. 2668. Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. If the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046.
This lawsuit results from a coastal restoration project. The language of the lease eliminates any right whatsoever of Bayou Canard to make any claims against CPRA as a result of the Shell Island West Restoration Project. That clear and explicit, broad language extends to all claims against CPRA by an oyster lessee resulting from a coastal restoration project, which includes the claims brought by Bayou Canard herein. See Avenal v. State, 2003-3521 (La. 10/19/04), 886 So.2d 1085, wherein the court found that nearly identical contract language validly released the *990 State from liability to oyster leaseholders as a result of a coastal diversion project.[2]
Thus, finding merit to this assignment of error, we reverse the summary judgment granted in favor of Bayou Canard, and we reverse the denial of the motion for summary judgment filed by CPRA, thereby granting summary judgment in favor of CPRA and against Bayou Canard.
ASSIGNMENT OF ERROR NO. 4
In this assignment of error, CPRA asserts that the trial court erred in awarding Bayou Canard attorney fees pursuant to La. R.S. 49:965.1. As we have reversed the summary judgment in favor of Bayou Canard, and granted summary judgment in favor of CPRA, we also reverse the award of attorney fees to Bayou Canard.
CONCLUSION
Therefore, for the foregoing reasons, the trial court judgments are reversed. Summary judgment is rendered in favor of the State of Louisiana, through the Coastal Protection and Restoration Authority, and against Bayou Canard, Inc., dismissing this suit. Costs of this appeal are assessed against Bayou Canard, Inc.
JUDGMENTS REVERSED; SUMMARY JUDGMENT GRANTED.
Whipple, C.J. concurs and assigns reasons.
Chutz, J. concurs (by JMM)

We note that the language of Lease 28549-01 differs slightly in that it states that it holds harmless "the State of Louisiana and/or the United States, their officials, representatives, employees, agencies, departments, and/or commissions." Also, the purpose permitting the hold harmless is stated in lease number 28549-01 as "management, preservation, enhancement, creation, or restoration of coastal wetlands and from impacts associated with projects authorized and defined under the state's Coastal Restoration Wetlands Conservation and Restoration Plan undertaken by the State and/or the United States, their officials, agents, representatives, employees, agencies, departments, and/or commissions, for the benefit of the people of the State of Louisiana."

In Avenal, oyster fishermen holding oyster leases in the Breton Sound area claimed they suffered a compensable taking under the Louisiana Constitution as a result of a coastal restoration project. The Louisiana Supreme Court reversed the lower courts' judgments awarding compensation, and held that the vast majority of the oyster fishermen were not entitled to compensation because their leases contained clauses holding the State harmless from any loss or damage resulting from the coastal diversion project. The Court further found that the claims of the oyster fishermen whose leases did not contain hold harmless clauses were prescribed. Avenal , 886 So.2d at 1088.