STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2020CA1149
C/W
NUMBER 2020CA1150

GULF WAVE OYSTERS, INC., BAYOU CANARD, INC., ALTHEA LYNN JURISICH, MITCHELL B. JURISICH, SR., MITCHELL B. JURISICH, JR., FRANK JURISICH, GRASSHOPPER OYSTERS, INC., PELICAN ISLAND OYSTERS, INC., PRINCE CHARMING, INC., & SHELL ISLAND, INC.

VERSUS

STATE OF LOUISIANA, THROUGH THE COASTAL PROTECTION & RESTORATION AUTHORITY

**Judgment Rendered:** AUG 1 9 2021

\* \* \* \* \* \*

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Suit Number C685093 c/w C685094

Honorable Trudy M. White, Presiding

\* \* \* \* \* \*

| | |
|---|---|
| George Pivach, II<br>Corey E. Dunbar<br>Belle Chasse, LA | Counsel for Plaintiff/Appellee<br>Gulf Wave Oysters, Inc., et al |
| Lawrence E. Marino<br>Cearley W. Fontenot<br>Lafayette, LA<br><br>and<br><br>Richard L. Traina<br>Harry J. Vorhoff<br>Baton Rouge, LA | Counsel for Defendant/Appellant<br>State of Louisiana, through the<br>Coastal Protection & Restoration<br>Authority |

\* \* \* \* \* \*

BEFORE: GUIDRY, McCLENDON, AND LANIER, JJ.

**GUIDRY, J.**

Defendant, the State of Louisiana, through the Coastal Protection and Restoration Authority (CPRA), appeals from a judgment of the district court in favor of plaintiffs, Gulf Wave Oysters, Inc., Bayou Canard, Inc., Althea Lynn Jurisich, Mitchell B. Jurisich, Sr., Mitchell B. Jurisich, Jr., Frank Jurisich, Grasshopper Oysters, Inc., Pelican Island Oysters, Inc., Prince Charming, Inc., and Shell Island, Inc. (collectively "plaintiffs"), reversing decisions of an administrative law judge and remanding the matter to the State of Louisiana, Division of Administrative Law, to conduct a hearing on compensation relative to marketable oysters. For the reasons that follow, we reverse.

## FACTS AND PROCEDURAL HISTORY

CPRA acquired leases from plaintiffs, ten oyster leaseholders, in 2013 and 2015 pursuant to the Oyster Lease Acquisition and Compensation Program (OLACP), La. R.S. 56:432.1. The notices of acquisition stated that it was necessary and proper for CPRA to acquire the leased property for purposes of coastal protection, conservation, or restoration as part of the Shell Island Restoration Berm Enhancement Project (BA-110) and Shell Island West Restoration Project (BA-111). CPRA paid the plaintiffs compensation for the fair market value of their leased acreage and compensation for the marketable oysters contained on the leased acreage.

Thereafter, plaintiffs initiated two administrative proceedings by requesting an administrative hearing in response to the 2013 and 2015 acquisitions. Plaintiffs claimed the compensation issued by CPRA failed to properly compensate them for the fair market value of their leasehold interest and for the standing oyster crop that was acquired. Particularly, plaintiffs asserted with regard to the standing oysters that CPRA failed to pay the current sack price for marketable oysters and reduced the

compensation for marketable oysters by utilizing rules not legally adopted by CPRA as required by the Administrative Procedure Act (APA).

CPRA subsequently filed motions for summary judgment on February 25, 2019, in each administrative proceeding. CPRA asserted that plaintiffs' claims "aris[e] from coastal restoration projects" and therefore, in light of this court's prior decision in Bayou Canard, Inc. v. State, through Coastal Protection and Restoration Authority, 17-1067 (La. App. 1st Cir. 5/14/18), 250 So. 3d 981, 989, writ denied, 18-0965 (La. 10/29/18), 254 So. 3d 1209, and waiver language in the state oyster leases waiving all claims "whatsoever" against the state arising from coastal restoration projects, plaintiffs have waived all claims, including OLACP claims, against the state arising from the Shell Island Restoration Project. Therefore, CPRA asserted that it was entitled to judgment as a matter of law dismissing the plaintiffs' claims.

Plaintiffs responded by filing motions for partial summary judgment regarding their right to an administrative hearing and compensation resulting from the "harvest efficiency ratio procedure" (HERP) reduction. Plaintiffs asserted that the oyster lease clauses do not eliminate the rights created by the legislature in enacting OLACP, and CPRA is without authority to interpret oyster leases in a manner that permits them to ignore OLACP or repeal or abrogate the rights created by OLCAP, including the right to compensation and the right to an administrative hearing. Additionally, plaintiffs asserted that HERP is a rule, which must be promulgated in accordance with the rule making procedure found in the Administrative Procedure Act (APA), and that was not done in this case. Therefore, plaintiffs asserted that because there is no legal basis to support the reduction, they should be compensated for one hundred percent of the marketable oysters located on the oyster leases.

3

Thereafter, the administrative law judge (ALJ) signed orders granting CPRA's motions for summary judgment. The ALJ found that the language of plaintiffs' oyster lease contracts eliminates any right whatsoever of plaintiffs to make any claims against CPRA as a result of coastal restoration projects, which includes a request for an administrative hearing in order to contest the amount of compensation due for CPRA's acquisition of plaintiffs' oyster leases. Specifically, the ALJ found there was no mandatory requirement for a hearing under the terms of La. R.S. 56:432.1(C); rather, the legislature allowed for the possibility of a hearing under OLACP, and plaintiffs waived that possibility in their oyster lease contracts. The ALJ also signed orders denying plaintiffs' motions for partial summary judgment. The ALJ found that plaintiffs waived the opportunity for a hearing in their oyster lease contracts, and their request for additional compensation based on CPRA's acquisition of their oyster leases is moot because of said waiver.

Plaintiffs filed petitions for judicial review of the final decisions of the ALJ, including the order granting CPRA's motion for summary judgment and the order denying plaintiffs' motion for partial summary judgment. The two petitions for judicial review were thereafter consolidated. Following a hearing, the district court signed a judgment in favor of plaintiffs and against CPRA: reversing and vacating CPRA's motion for summary judgment, reversing the denial of plaintiffs' motion for partial summary judgment and granting plaintiffs' motion, remanding the matter back to the Division of Administrative Law to conduct an administrative hearing on compensation relative to the marketable oysters under OLACP, and ordering that the administrative hearing on compensation be held without applying CPRA's HERP rule, considering that the rule has been held by this court to be unenforceable in Bayou Canard, Inc. The district court further ordered CPRA to promulgate a rule for compensation relative to marketable oysters pursuant to the APA.

CPRA now appeals from the district court's judgment, and plaintiffs have filed an answer to the appeal seeking a remand of this matter to the Division of Administrative Law to conduct an administrative hearing on all compensation to which the plaintiffs are entitled under OLACP.

## DISCUSSION

### Standard of Review

A district court's judicial review of a final administrative decision is governed by the APA and its standard of review as set forth in La. R.S. 49:964(G):

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Affected by other error of law;
> (5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.

When reviewing a final administrative decision, the district court functions as an appellate court, confining its review to the administrative record. Doc's Clinic, APMC v. State, ex rel. Department of Health and Hospitals, 07-0480, pp. 7-8 (La. App. 1st Cir. 11/2/07), 984 So. 2d 711, 718, writ denied, 07-2302 (La. 2/15/08), 974 So. 2d 665. Once a final judgment is rendered by the district court, an aggrieved party may seek review by appeal to the appropriate appellate court. La. R.S. 49:965; Mid-City Automotive, LLC v. Louisiana Department of Public Safety, 19-1219, p. 7 (La. App. 1st Cir. 5/11/20), 304 So. 3d 457, 461. On review of the district court's

5

judgment, no deference is owed by the court of appeal to the factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. Mid-City Automotive, LLC, 19-1219 at p. 7, 304 So. 3d at 461. Thus, an appellate court sitting in review of an administrative agency reviews the findings and decision of the administrative agency and not the decision of the district court. Mid-City Automotive, LLC, 19-1219 at p. 7, 304 So. 3d at 461. Consequently, this court will conduct its own independent review of the record in accordance with the standards provided in La. R.S. 49:964(G).

**Oyster Statutes**

The leasing of state-owned water bottoms to private parties for the purpose of oyster farming is governed exclusively by a specific statutory scheme. Avenal v. State, 03-3521, p. 13 (La. 10/19/04), 886 So. 2d 1085, 1095, cert. denied, 544 U.S. 1049, 125 S. Ct. 2305 (2005). Under this scheme, the State of Louisiana owns "all oysters and other shellfish and parts thereof grown [on the state's water bottoms], either naturally or cultivated, and all oysters in the shells after they are caught and taken therefrom … except as provided in R.S. 56:4." La. R.S. 56:3; Avenal, 03-3521 at p. 13, 886 So. 2d at 1095. However, in order to foster, cultivate, and protect the Louisiana oyster industry, the state has statutorily authorized the issuance of oyster leases to private parties. Avenal, 03-3521 at p. 13, 886 So. 2d at 1095.

The Department of Wildlife and Fisheries is authorized to grant leases on state-owned water bottoms for oyster cultivation, bedding, and harvesting, and matters relating thereto, as provided in Subpart D of Part VII of Chapter I of Title 56 of the Louisiana Revised Statutes of 1950. La. R.S. 41:1225. According to La. R.S. 56:425(C), "[t]he secretary may make such stipulations in the leases made by him as he deems necessary and proper to develop the industry; however, these stipulations must be consistent with the provisions of this Subpart. The secretary

6

may also make such stipulations as he deems necessary and proper in relation to coastal protection, conservation, or restoration."

In 2006, the Louisiana legislature adopted Act 425 relative to oyster leases, which amended and reenacted oyster statutes in Title 56 of the Revised Statutes and authorized the acquisition by the state of oyster leases directly impacted by coastal protection, conservation, or restoration projects; established a hierarchy of rights; established limitations on actions against the state, its political subdivisions, or the United States; and established a lease acquisition and compensation program in the Department of Natural Resources.

Following the revision, an oyster lessee enjoys the exclusive use of water bottoms leased and of all oysters and cultch grown or placed thereon; however, this exclusive use is subordinate to the rights or responsibilities of the state, any political subdivision of the state, the United States, or any agency or agent thereof, to take any action in furtherance of integrated coastal protection. La. R.S. 56:423(A)(1). Additionally, the state of Louisiana, the United States, and any agency, agent, contractor, or employee thereof shall be held free and harmless from any claims arising under any oyster lease for actions taken for the purpose of coastal protection, conservation, or restoration. La. R.S. 56:427.1(A). However, a leaseholder whose oyster lease is acquired in whole or in part by CPRA pursuant to La. R.S. 56:432.1 for dredging, direct placement of dredged or other materials, or other work or activities necessary for the construction or maintenance of a project for integrated coastal protection may seek compensation from the Coastal Protection and Restoration Authority pursuant to that Section. La. R.S. 56:427.1(C)(1).

In particular, Act 425 created OLACP. La. R.S. 56:432.1. Due to potential conflicts between the Department of Wildlife and Fisheries oyster leasing program and the Louisiana coastal restoration program provided for in La. R.S. 49:214.1 et seq., the legislature directed CPRA to develop a program for the acquisition of and

7

compensation for oyster leases or portions of oyster leases upon which occurs or will occur, dredging, direct placement of dredged or other materials, or other work or activities necessary for the construction or maintenance of a project for integrated coastal protection. La. R.S. 56:432.1(A).

Under OLACP, the state of Louisiana, through CPRA, may acquire any oyster lease, in whole or in part, due to the impact of dredging, direct placement of dredged or other materials, or other work or activities necessary for the construction or maintenance of a project for integrated coastal protection. La. R.S. 56:432.1(B). Acquisition shall be implemented by a notice of acquisition issued to the leaseholder, which shall specify the acreage acquired and the effective date of the acquisition. La. R.S. 56:432.1(B)(1). CPRA shall determine the compensation for any acquisition pursuant to this Section in accordance with rules or regulations adopted by that department after consideration of recommendations by the Louisiana Oyster Task Force and shall issue its determination of compensation, along with the full amount of its determination of compensation, to the leaseholder together with the notice of acquisition. La. R.S. 56:432.1(B)(2)(a) and (3). Acceptance of such payment shall not preclude any claim for additional compensation, as provided in 56:432.1. La. R.S. 56:432.1(B)(3).

A leaseholder whose lease is acquired in whole or in part may seek an administrative hearing through CPRA as to whether the acquisition due to the impact of dredging, direct placement of dredged or other materials, or other work or activities necessary for the construction or maintenance of a project for integrated coastal protection is proper or whether the compensation issued by CPRA satisfies the rules or regulations of that department. Adjudications are conducted before an administrative law judge, who issues a final decision to the leaseholder. La. R.S. 56:432.1(C)(2) and (3). A leaseholder may seek judicial review of the final decision

of the administrative law judge in the Nineteenth Judicial District Court. La. R.S. 56:432.1(D)(1).

In the instant case, plaintiffs requested an administrative hearing seeking additional compensation, because the compensation issued by CPRA allegedly failed to properly compensate them for their leasehold interests and standing oyster crops acquired by CPRA. Additionally, plaintiffs sought a determination as to whether the compensation issued by CPRA for each of the notices of acquisition satisfies the rules and regulations under OLACP.

In seeking summary judgment before the ALJ, CPRA asserted that based on language in the plaintiffs' oyster leases and this court's previous holding in Bayou Canard, plaintiffs "waived" all claims against CPRA arising from coastal restoration projects, including OLACP claims. The oyster leases[1] at issue each contain a "Coastal Wetlands Restoration Advisory" clause, which provides, in part:

> [P]ursuant to the Louisiana Constitution and the public trust doctrine, the State as Lessor hereby conveys to Lessee a limited interest in the water bottom which is described in this lease, subject to the conditions that: (1) this lease is subservient to the State's past, present or future coastal restoration projects; (2) the State's coastal restoration projects may cause adverse effects in the area of this lease; and (3) the State is only issuing this lease based upon the mutual understating of both the State and the Lessee that Lessee's property interest conveyed by this lease *shall not include any right whatsoever to make claims against the State as a result of freshwater diversion or any other coastal restoration projects* .... [Emphasis added.]

Additionally, the leases contain an "Allocation of Risk and Liability, and Indemnification" clause, which provides, in part:

> [I]n consideration of the issuance of this lease, Lessee shall assume all liability and risk of loss, and agrees that this lease is subservient to all past, present or future activities as described above. *Lessee also agrees to indemnify and hold* ... the State of Louisiana, the Wildlife and Fisheries Commission, the United States, and any agency, agent, contractor, or employee thereof, *harmless from and for, all loss, damage, costs and/or expense in any way associated with this oyster lease* and the oysters, cultch, reefs and beds located therein, including

---

[1] While not all of the leases contain identical lease language as that quoted in this opinion, the overall substance of the following lease provisions is the same in each lease.

9

any loss, sustained by the Lessee ... *arising out of,* connected with, incident to, or directly or indirectly resulting from or related to ... any other *action taken for the purpose of coastal protection, conservation, or restoration undertaken by the State of Louisiana,* the Wildlife and Fisheries Commission, political subdivisions of the state, the United States, and any agency, agent, contractor, or employee thereof. [Emphasis added.]

It is undisputed that CPRA acquired plaintiffs' oyster leases due to two coastal restoration projects. The language of these leases, particularly the "Coastal Wetlands Restoration Advisory" clause, eliminates any right *whatsoever* of lessees to make any claims against CPRA as a result of coastal restoration projects. This explicit, broad language has been found to extend to *all claims* against CPRA by an oyster lessee resulting from a coastal restoration project. See Bayou Canard, Inc., 17-1067 at p. 12, 250 So. 3d at 989.

Plaintiffs assert that these waiver clauses cannot apply to requests for an administrative hearing pursuant to OLACP, and that Bayou Canard, which was not brought pursuant to the administrative procedure in OLACP, is distinguishable. However, from our reading of the statutory scheme as a whole, in conjunction with the lease language and prior jurisprudence, we disagree.

The Louisiana Supreme Court in Avenal, 03-3521 at pp. 23-24, 886 So. 2d at 1102, found clauses like the ones at issue in the instant appeal to be legally valid and enforceable under the authority granted the Department of Wildlife and Fisheries in La. R.S. 56:425(C). In fact, La. R.S. 56:425(C) was amended in 2006 to specifically provide that "[t]he secretary may also make such stipulations as he deems necessary and proper in relation to coastal protection, conservation, or restoration." Contrary to the prior language contained in La. R.S. 56:425(C) regarding stipulations, there is no language requiring that this stipulation be consistent with the provisions of subpart D governing the oyster industry.

In addition to the stipulation language in La. R.S. 56:425(C), the legislature also added the language found in La. R.S. 56:431.1 creating OLACP and the right

10

to compensation for oyster leases acquired by CPRA for construction or maintenance of a project for integrated coastal protection. Louisiana Revised Statute 56:432.1(B)(3) specifically refers to proceedings under OLACP as "claims for additional compensation." Consequently, given the language in the oyster leases, which language the State was authorized to include, La. R.S. 56:432.1(B)(3)'s reference to OLACP proceedings as "claims for additional compensation," and our prior holding in Bayou Canard, we find the ALJ was legally correct in granting summary judgment in favor of CPRA.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court and grant summary judgment in favor of CPRA. We likewise deny plaintiffs' answer to the appeal. All costs of this appeal are assessed to Gulf Wave Oysters, Inc., Bayou Canard, Inc., Althea Lynn Jurisich, Mitchell B. Jurisich, Sr., Mitchell B. Jurisich, Jr., Frank Jurisich, Grasshopper Oysters, Inc., Pelican Island Oysters, Inc., Prince Charming, Inc., and Shell Island, Inc.

**REVERSED; RENDERED; AND ANSWER TO APPEAL DENIED.**